## In Re: Charles Mikasinovich, Otherwise Known As Charles Mixanotch, a Minor.

Argued April 21, 1933.

Before Trex-
ler, P. J., Keller, Baldrige, Stadtfeld, Parker and
James, JJ.

*William S. Rial,* and with him *H. E. Marker,* for appellant.

*Arnold M. Replogle,* and with him *Paul M. Robinson,* for Arnold M. Replogle, Attorney of Record for Charles Mikasinovich, otherwise known as Charles Mixanotch, a Minor.

*Robert M. Carson,* for Braddock General Hospital and Dr. George E. Seitz, appellees.

OPINION BY KELLER, J., October 2, 1933:

Charles Mikasinovich, a minor fifteen years old, was badly hurt on November 30, 1930 in an automobile collision with one Andrew Pape. Alleging that the accident was due to Pape's negligence, Rade Mikasinovich, father of the injured boy, consulted Arnold M. Replogle, a lawyer of Allegheny County, who brought an action in the court of common pleas of that county on behalf of Charles M. Mikasinovich, otherwise known as Charles Mixanotch, by his father and next friend, Rade Mikasinovich, and Rade Mikasinovich in his own right against Andrew Pape to No. 3660, January Term, 1931, to recover the damages sustained by them respectively. Under the Act of May 12, 1897, P. L. 62, it was necessary to join the two rights of action in one suit, but they remained distinct, requiring separate verdicts and judgments: Shaw v. Plains Twp., 270 Pa. 387, 113 Atl. 410; Ehrlich v. Stiefel, 94 Pa. Superior Ct. 406, 408. Under the arrangement made between the attorney and the boy's father the action was

brought on a contingent basis, the attorney to receive one-third of whatever should be recovered.

It appeared that Atlas Casualty Company had insured Pape against such liability, and it endeavored to effect a settlement of the case, offering $2,500; the attorney offered to settle for $4,000 of which, under his arrangement with the minor's father, $2,666.67 would have gone to the two plaintiffs. The hospital, which had taken care of the boy, presented a bill for $439.50 and the doctor, who attended him, a bill for $450. Sometime in the fall of 1931 the Atlas Casualty Company paid Rade Mikasinovich the sum of $1,500 and had him sign a paper releasing the defendant in the action, Pape, from all liability on account of the accident. It also paid Barclay-Westmoreland Trust Company, which on December 3, 1931 on petition of both the father and son had been appointed guardian of Charles Mikasinovich by the orphans' court of Westmoreland County, the sum of $1,000 and took from it a release of all claims on behalf of its ward against said Pape growing out of said accident. The action in Allegheny County was not discontinued or settled. In that action a statement had been filed claiming damages (1) on behalf of the injured boy for pain and suffering and possible permanent injuries and (2) on behalf of the father for expenses for medical care and attention and loss of services of the boy until he became of age.

On February 6, 1932 petitions were severally presented to the orphans' court of Westmoreland County by Braddock General Hospital and George C. Seitz, M. D., respectively praying that court to order the guardian of said minor to pay their respective bills, $439.50 and $450 out of the moneys of its said ward in its hands, and a citation was issued directed to said guardian to show cause why the prayer of said petitions should not be granted, to which answers were filed by the guardian denying liability for payment of

said bills out of the fund in its hands and averring that the father of said minor had received moneys which should be used for the payment of just obligations of that kind. On February 18, 1932 Arnold M. Replogle presented his petition to the orphans' court of Westmoreland County reciting the facts in the case in detail and praying the court to enter an order declaring the release signed by Rade Mikasinovich and Barclay-Westmoreland Trust Company, guardian as aforesaid, to be void and of no effect as in fraud of the rights of the hospital and attending physician, and of himself as attorney in said action, and because the sum received for said minor's injuries was so inadequate as to constitute a gross fraud upon his interests. To this petition the Barclay-Westmoreland Trust Company filed an answer; but no citation seems to have issued or been served upon or accepted by Atlas Casualty Company or Andrew Pape. The court made no order upon the citations issued on the petition of the hospital and attending physician, but on the petition filed by Mr. Replogle entered an order declaring the release made by the Barclay-Westmoreland Trust Company on behalf of its ward Charles Mikasinovich to the said Andrew Pape for all claims, rights of action, etc., arising out of the accident of November 30, 1930 to be null and void, and ordered and directed that all moneys and funds now in the hands of said Barclay-Westmoreland Trust Company, and placed there as a result of the said attempted settlement, be held by said Trust Company until the final disposition of the case at No. 3660, January Term, 1931, in common pleas Allegheny County and until the further order of the court. The Atlas Casualty Company appealed.

We need not decide whether Atlas Casualty Company appeared in court to contest the rule granted on Mr. Replogle's petition. The citation should have been served on all interested and concerned parties, including Pape and Atlas Casualty Company: Act of

June 7, 1917, P. L. 363, Sec. 17, p. 374; White's Est., 163 Pa. 388, 30 Atl. 192; Simpson's Est., 253 Pa. 217, 98 Atl. 35. The casual presence in court of their attorneys does not constitute an appearance, if they took no part in the hearing and proceedings. The Atlas Company is in court now and our disposition of the appeal renders it unnecessary to consider that feature of the case further.

We have no doubt of the power of the orphans' court after investigation and hearing, either on its own initiative or on petition of an interested party to annul and set aside a release made by a guardian in behalf of its ward if it found that it had been entered into improvidently or in fraud of its ward's rights. And we think Mr. Replogle, the attorney who instituted the action in Allegheny County, has such an interest in the matter as justifies his taking action. While his employment by the injured boy's father on a contingent basis would not be binding on the court, he has in good faith rendered services to the ward and is entitled to be paid reasonable compensation for such services out of the fund realized on said claim.

The orphans' court is specifically given jurisdiction over (a) the appointment, control, removal and discharge of the guardians of minors, and the settlement of their accounts; ...... and (n) the exercise of all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers heretofore enumerated or in addition thereto: Act of June 7, 1917, P. L. 363, Sec. 9, pp. 371, 372. The word 'control' includes the meaning, "To exercise restraint or direction upon the free action of." Shorter Oxford English Dictionary. See Laverelle's Est., 101 Pa. Superior Ct. 448.

By Section 40 of the Fiduciaries Act of June 7, 1917, P. L. 447, p. 508, it is provided: "Whenever it shall be proposed to compromise or settle any claim, whether

in suit or not, by or against a minor or the estate of a decedent, or to compromise or settle any question or dispute concerning the validity or construction of any last will and testament or the distribution of any decedent's estate, the orphans' court having jurisdiction of the accounts of the fiduciary shall be authorized and empowered, on petition by such fiduciary, setting forth all the facts and circumstances of such claim or question and proposed compromise or settlement, and duly verified by oath or affirmation, and after due notice to all parties interested, and after due consideration, aided, if necessary, by the report of a master, if satisfied that such compromise or settlement will be for the best interests of such minor or of the estate of such decedent, to enter a decree authorizing the same to be made, which decree shall operate to relieve the fiduciary of responsibility in the premises.''

This makes it clear that the orphans' court has control [or, at any rate, had prior to the enactment of the Act of April 26, 1933, P. L. 88, No. 56, which gives the court in which such action is brought the authority to compromise or settle a suit pending to recover damages for personal injuries sustained by a minor] of the compromise, settlement and release of any action or claim brought by or on behalf of one of its minor wards, and any person attempting to compromise or settle such claim or suit is put upon notice that the action of the guardian in that respect is subject to the review and affirmance or disaffirmance, after hearing, of the court which appointed the guardian; and in case a settlement has been improvidently made by the guardian to the manifest injury of the ward, the court may after hearing following notice to all parties interested, set aside the settlement, including any release given thereunder, and is not limited to a surcharge of the guardian as in Komara's Est., 311 Pa. 135, 166 Atl. 577. See Mulholland's Est., 154 Pa. 491, 500, 26 Atl. 612. In fact the Komara case emphasizes

the care and investigation necessary to be made by a guardian in dealing with its ward's estate, holding that an order of court improvidently obtained without due notice to minor children interested, by an executor of a will in settling the estate of his decedent, will not protect a guardian who acted under it without making the independent investigation, which it should have made, and which the law contemplates it shall make, to care for and protect its ward's estate. Hence the lower court had power, on May 19, 1932, when it entered the decree appealed from, after hearing following notice to all parties interested, to set aside and annul the release which had been given in fraud of the minor's rights or to his manifest injury, if it so determined. But it had to do one thing or the other. If it set aside and annulled the settlement and release, it had to be a complete setting aside and annulment. It could not declare it null and void, and in the same voice, affirm it so far as holding and retaining the consideration paid under it. It could not strike down with one hand and uphold with the other. If after due consideration and hearing following notice to all parties interested, the court determines that the settlement and release made by the guardian with the insurance company was so detrimental to the interests of the ward as to require it to be set aside, it may do so, but then it must at the same time order and direct its agent and officer, the guardian of its appointment, to pay back to the insurance company the money paid by it on the strength of the settlement and release. We are not satisfied as to what course the court would take in this view of the case and hence return it for further consideration and action in the light of this opinion.

As respects the petition of the hospital and attending physician, neither of them has any claim upon the ward, as respects the fund derived by his guardian from the trial or settlement of this action or the ac-

cident and injuries with which it is concerned. Where a minor is living with his father in the family relation, in case of an action for injuries to the minor through the negligence of a third party, the claim of the father must include hospital and medical bills and expenses incurred because of the injury, if they are to be recovered, as well as compensation for loss of services of the son until he is twenty-one years old: Oakland Ry. Co. v. Fielding, 48 Pa. 320; Penna. R. R. Co. v. Kelly, 31 Pa. 372; Woeckner v. Erie Electric Motor Co., 182 Pa. 182, 37 Atl. 936; while the minor's claim is restricted to damages for pain and suffering and loss of earning power after he becomes of age: Penna. R. R. Co. v. Kelly, supra. In fact in Phila. Traction Co. v. Orbann, 119 Pa. 37, 12 Atl. 816, (decided in 1888), in reversing the judgment and sending the case back for trial, the Supreme Court called attention to the fact that "care must be taken also that the plaintiff [the minor] shall not be allowed to recover for any matter or thing to which his father may be entitled, in any action pending or to be brought, for damages resulting to him from the same injury," (p. 47). See also Freed v. P. R. T. Co., 93 Pa. Superior Ct. 72; Freed v. P. R. T. Co., 93 Pa. Superior Ct. 75, 76.

It follows that if this case had been, or should be, brought to trial, the verdict, if any, for the minor plaintiff could not have included, or could not include, one cent for hospital expenses or doctor's bills; that all such items would have to be included in the verdict, if any, for the father; and that the hospital and attending physician would have to look to the father for payment. It follows that, even though the father may not pay the bills, they cannot ask for payment out of the verdict awarded the minor as damages for his pain and suffering and loss of earning power, nor out of any settlement made on his account in lieu of ver-

dict, but must look to the father, whose claim embraces their bills.

It is true that there are many cases which hold that hospital and medical bills may be ordered to be paid as necessaries out of a minor's estate where his parents are unable to provide them and they are determined to be needful for his health. But this is, as respects doctor and hospital bills in connection with the accident because of which the fund is realized, a different sort of "estate". The law limits the recovery of the minor to damages for his pain and suffering and loss of earning power after he becomes of age and requires that all claims for expenses in connection with the nursing, hospital care and medical services rendered the minor growing out of the injury shall be recovered by and chargeable against the father, if he is living and maintaining the family relation with the son. If it is desired to protect doctors and hospitals in such circumstances it will be for the legislature to take care of it, if it can constitutionally do so. See Laplacca v. P. R. T. Co., 265 Pa. 304, 108 Atl. 612.

The assignments of error are sustained. The order is reversed and the record remitted for further proceedings not inconsistent with this opinion. Each party to pay its own costs.