### Lucabaugh Estate

*Herbert B. Cohen,* for accountant.

*Daniel K. Medill,* for Phares B. Lucabaugh, Sr.

*W. Burg Anstine,* for Max G. Anstine, a claimant.

GROSS, P. J., April 22, 1949.—The account of Pearl Lucabaugh, as administratrix of the estate of Phares Lucabaugh, Jr., late of the Township of Jackson, York County, Pa., deceased, was filed in the office of the Register of Wills of York County, on January 19, 1949, and, after due and legal advertisement, was called for audit and confirmation on March 9, 1949. The audit was continued from time to time for the purpose of taking testimony, and was finally closed on March 28, 1949.

On May 21, 1947, decedent, Phares Lucabaugh, Jr., aged about 26 years, was a passenger in an automobile, driven by one Elmer C. Wolf, which collided with another automobile, and, as a result of the collision, both Phares Lucabaugh, Jr., and Elmer C. Wolf were instantly killed.

Lucabaugh decedent, died intestate, leaving to survive him his widow, Pearl Lucabaugh, and a daughter, Jeane Lucabaugh, posthumously born June 29, 1947, as his only issue. Letters of administration on his estate were granted to his widow, Pearl Lucabaugh, the accountant, on July 16, 1947. No letters were granted on the estate of Elmer C. Wolf. Through negotiations between the widow and the Harleysville Mutual Casualty Insurance Company, the insurance carrier for Wolf, a settlement of the claim for damages arising

out of the wrongful death of Lucabaugh through the alleged negligence of Wolf was effected on April 24, 1948, without suit having been entered, without the approval of any court, and without a guardian having been appointed for the estate of the minor daughter to represent her interest, by which the insurance company paid to Pearl Lucabaugh, the widow and/or administratrix, in settlement of damages, the sum of $4,500, and took from her, as we are informed by her counsel, a release in both her individual and fiduciary capacities.

Decedent, Lucabaugh, left no estate. His widow, as administratrix, filed this account, in which she charges herself only with the sum of $4,500, the moneys received by her in the settlement aforesaid, and takes credit thereagainst for six items in the total sum of $29.25, representing costs of administration, leaving a balance in her hands of $4,470.75, which, in her petition for adjudication, she asks this court to distribute according to law.

At the audit we raised the question of the jurisdiction of the orphans' court to distribute this fund, when all counsel interested agreed of record that this question was not then being raised, nor would it be raised at any time by them, and requested that the court assume jurisdiction and make distribution of the fund.

It is fundamental that jurisdiction of the subject matter cannot be conferred by consent: Hunter Orphans' Court, vol. 2, page 960. The orphans' court is a court of limited jurisdiction, exercising only such power as is given it by statute expressly, or by necessary implication: Cutler's Estate, 225 Pa. 167; Mains' Estate, 322 Pa. 243; Wolfe v. Lewisburg Trust Company, 305 Pa. 583. The want of jurisdiction over the subject matter, unless there is an estoppel to raise the

question, may be raised at any time, either in the trial court, or in the appellate court: Patterson's Estate, 341 Pa. 177.

Where the want of jurisdiction is plain, the appellate court is compelled suo moto to take notice of it: Johnstone v. Fritz, 159 Pa. 378. A decree without jurisdiction is void and of no effect: Patterson's Estate, supra. The jurisdiction of the orphans' court is said to be purely statutory, but aside from any statute, it has the full powers of a court of equity as respects matters within its jurisdiction and is limited only by the necessities of the case and its duty to administer equity in accordance with established rules, and may make any decree necessary and expedient to the proper administration of estates of decedents and minors: Mauser v. Mauser, 326 Pa. 257; Heinz's Estate, 313 Pa. 6; Mains' Estate, supra.

The Orphans' Court Act of June 7, 1917, P. L. 363, confers jurisdiction in section 9 thereof, inter alia, as follows:

"(a) The appointment, control, removal, and discharge of the guardians of minors, and the settlement of their accounts;

"(d) The control, removal, and discharge of executors and administrators deriving their authority from the register of the respective county, and the settlement of their accounts;

"(e) The distribution of the assets and surplusage of the estates of decedents among creditors and others interested;

"(n) The exercise of all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers hereinbefore enumerated or in addition thereto."

By section 40 of the Fiduciaries Act of June 7, 1917, P. L. 447, without quoting, it is provided that when-

ever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against a minor, or the estate of a decedent, the orphans' court having jurisdiction of the accounts of the fiduciary shall be authorized and empowered; on petition by the fiduciary, setting forth all the facts and circumstances of such claim and proposed compromise or settlement and, after due notice to all parties interested, if satisfied that such compromise or settlement will be to the best interests of such minor, or of the estate of such decedent, to enter a decree authorizing the same to be made, which decree shall operate to relieve the fiduciary of responsibility in the premises.

The fund here for distribution was not received by the accountant in compromise or in settlement of a claim in suit, brought by the administratrix, but was received by her in compromise and in settlement of a claim upon which an action by the administratrix could have been based and in which the minor daughter would have had an interest, whether the action was brought under the Wrongful Death Statute of April 15, 1851, P. L. 669, its supplements and amendments, or under the Survival Statute, sec. 35(b) of the Fiduciaries Act of June 7, 1917, P. L. 447. Proper practice to insure finality of the settlement dictates that the settlement should have been made with the approval of the orphans' court. See Goodrich-Amram, Pa. R. C. P. 2206 and commentaries.

Wolf left no estate. His liability insurance was in the sum of $5,000. Settlement in the sum of $4,500 therefore seems to be fair and equitable and it is so agreed by all parties. The account and petition for adjudication might well be considered as a petition for approval of the settlement nunc pro tunc.

The language quoted above from section 9 of the Orphans' Court Act unquestionably confers jurisdiction

upon this court to control the acts of all administrators and also of guardians of the estates of minors.

In the case of Charles Mikasinovich, a minor, 110 Pa. Superior Ct. 252, where a settlement was made without the approval of court, Judge Keller, citing the above quoted acts of assembly as his authority, made the following observations:

"We have no doubt of the power of the orphans' court after investigation and hearing, either on its own initiative or on petition of an interested party to annul and set aside a release made by a guardian in behalf of its ward if it found that it had been entered into improvidently or in fraud of its ward's rights."

It therefore follows, that this court, irrespective of the special character of the fund, can, and ought to, refuse to discharge the administratrix and her surety, until it is shown that she has not abused the power conferred upon her, that she has performed her duties faithfully, and that she has not appropriated to her own use any part of the fund which belongs to her minor daughter.

She has filed her account in this court, and by so doing she admits that her daughter has an interest in the fund for distribution and it is therefore clear that this court has jurisdiction to distribute the fund.

We have not found an exact precedent for this proceeding but, after reviewing the authorities on this subject, we are convinced that we are proceeding in harmony with DeCalles' Estate, 35 D. & C. 593; Kober's Estate, 17 Dist. R. 184; Hewitt, Admx., v. Masser Motor Express, 43 D. & C. 514; Kovac's Estate, 73 Pitts. L. J. 42; Davis' Estate, 56 D. & C. 359, and Walker's Estate No. 2, 57 D. & C. 509.

We now come to the distribution of the fund against which three claims were presented for payment, as follows:

*Claim no. 1.*—By Phares Lucabaugh, Sr., the father of decedent, based upon two promissory notes, exhibits nos. 1 and 2, on which notes claimant was a joint accommodation maker for decedent, which notes were paid by claimant after decedent's death, and the amount claimed thereon by claimant is the sum of $307.18.

There is no dispute that claimant actually paid the sum of $307.18 and, if entitled to recover out of this fund, that would be the correct amount. The objection made to the allowance of the claim on behalf of the widow and minor daughter is that the settlement was made for the cause of action arising under the Wrongful Death Statute of April 15, 1851, P. L. 669, its supplements and amendments, and the moneys received in said settlement are not liable for the debts of decedent.

On the other hand, it is contended, on behalf of claimant, that the evidence does not show that the settlement was made under the Wrongful Death Statute, or the survival statute, sec. 35(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, or under both acts, and that any sum included in the $4,500 settlement which could have been recovered under the survival statute is subject to the payment of decedent's debts.

Lucabaugh having been instantly killed, could not have entered a suit in his lifetime, and, having left a wife and minor child to survive him, there were two rights of action against Wolf's estate, as follows:

The first right of action would be under the Wrongful Death Statute of April 15, 1851, P. L. 669, and its supplements and amendments of April 26, 1855, P. L. 309; June 7, 1911, P. L. 678; May 13, 1927, P. L. 992; and April 1, 1937, P. L. 196.

This action is governed by Pa. R. C. P. 2201 to 2225, relating to "actions for wrongful death". This action is known as a true action for wrongful death, and may be brought only if a spouse, child or parent survive and

no suit was brought by the injured person in his lifetime; and damages recovered in this suit are for the pecuniary loss suffered by the surviving spouse, child or parent, because of the death of decedent, and shall go to them in the proportion they would take his or her personal estate in case of intestacy, and without liability to creditors. Suit, however, not having been entered, rule 2206 will have no application.

The second right of action would be under the "survival of actions" statute, being section 35(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, an act to enforce the cause of action for personal injuries owned by decedent, and the damages recovered enure to the benefit of the estate of decedent, and are subject to liability for his debts.

Since the claim was settled without suit having been instituted, Pa. R. C. P. 2039, relating to minors as parties, and compromise and settlement of suits in which minors are interested, does not apply.

It is quite obvious, of course, that it would be to the benefit of the widow and minor daughter to have this fund distributed under the Wrongful Death Statute, because, by so doing, the fund would be exempt from the claims of decedent's creditors. We understand, as already found, that, when settlement was made, the widow gave her individual and fiduciary release to the insurance company, releasing the Wolf estate.

The widow was the administratrix of the estate and, under the Pennsylvania Procedural Rules, either of the above actions in the first instance were required to be brought by her as the personal representative of decedent, but, under rule 2202(b) if she did not bring action within six months after the death of decedent the action could have been brought by her or by any person entitled by law to recover damages in such action, as trustee ad litem on behalf of all persons entitled to share in the damages.

The widow insists that her settlement was made under the Wrongful Death Statute, and she is confirmed in this by the fact that no suit was ever entered and settlement of the claim was not made until almost one year after decedent's death. The mere filing of an account in the orphans' court does not necessarily stamp the fund received in settlement as having been received by the administratrix under the "survival" statute. It was her duty and the law required her, as we have already pointed out, to file this account in the orphans' court so that the rights of the minor daughter in the fund would be fully protected. Without further evidence showing the special character of the fund, we will assume that the widow acted to the best advantage of herself and daughter and distribute the fund as having been received under the Wrongful Death Statute.

*Claim no. 2.*—By Herbert B. Cohen, Esq., for professional services rendered in negotiating the settlement which resulted in the creation of the fund for distribution, in the amount of $650.

No objection was made to the allowance of this claim, and, it appearing to be reasonable and just, in consideration of the amount of damages recovered, and on the authority of McAlister, Admr., v. Stevens, 41 D. & C. 612, the claim is allowed.

*Claim no. 3.*—By Max G. Anstine, funeral director, for services rendered at the burial of decedent, in the sum of $480.50.

This claim was objected to on behalf of the widow and minor daughter, on the grounds that, under the Wrongful Dealth Act, the fund for distribution is not subject to its payment. The evidence submitted to support the claim clearly shows that the widow was completely prostrated as a result of the tragic death of her husband and was unable to make the necessary funeral arrangements for his burial; that she requested decedent's parents to make such arrangements and that

they employed claimant for that purpose. The total burial expenses were $630.50, of which the United States Government (decedent having been a veteran of World War II) contributed the sum of $150, leaving the balance claimed, in the sum of $480.50.

Under the Wrongful Death Statute, funeral expenses are an element of damages to be recovered, if the widow has made herself liable in any way for the payment of the same. This she did, and therefore we allow the claim. . . .

And now, to wit, April 22, 1949, it is hereby ordered, adjudged and decreed that account of Pearl Lucabaugh, as administratrix of the Estate of Phares Lucabaugh, Jr., late of the Township of Jackson, York County, Pa., deceased, is confirmed absolutely; and it is further ordered, adjudged and decreed that said accountant pay the distributions to the persons entitled to receive the same.

This decree is entered nisi and, in the absence of exceptions filed thereto within 10 days from the date hereof, the same shall become final, as of course.