Alvin H. FRANKEL, Guardian of the Estate of Nydia Pasceri, a minor

v.

John H. TODD, Jr. and Grayson Moore, Jr.

Civ. A. No. 31985.

United States District Court
E. D. Pennsylvania.

Oct. 25, 1966.

B. Nathaniel Richter, Philadelphia, Pa., for plaintiff.

Peter P. Liebert, 3rd, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

On May 13, 1961, Nydia Pasceri, 19 years of age, was a passenger in an automobile operated by defendant when it ran off the road and plunged over an embankment. Miss Pasceri sustained serious injuries including a fractured pelvis and a ruptured bladder. An out-of-state guardian was duly appointed for the minor and suit was instituted in this court based on the resultant diversity of

citizenship. The case was tried in May 1966, and the jury returned a verdict in the amount of $25,000 in favor of the guardian. Dissatisfied with the size of the verdict, the guardian seeks a new trial and urges, as grounds, that:

1. The Court erred in refusing to submit to the jury impairment of earning capacity as an element of damage.

2. The Court abused its discretion in refusing to postpone the trial.

3. The Court erred in refusing to permit plaintiff to present testimony as to a certain claimed disability resulting from injuries sustained in the accident.

4. The Court erred in refusing to allow the guardian to recover medical and hospital expenses.

5. The verdict was inadequate.

Each of the grounds has been considered carefully and will be discussed briefly. Since all lack merit the motion for new trial will be denied.

*1. Impairment of Earning Capacity.*

Among the injuries sustained by Miss Pasceri were fractures of several of the pelvic bones. The healing of the fractures resulted in a distortion of the pelvic ring, shifting the right side upward leaving the crest of the right hip approximately one-half inch [1] higher than the left. The deformity of the hip is permanent and cannot be corrected.

In essence, it is plaintiff's contention that proof of permanent injury, without more, requires submission of impairment of earning power to the jury. The cases he has cited hold only that, even in the absence of actual loss of earnings, the injury and the resultant disabilities may nevertheless establish impairment of earning power for which the injured person is entitled to be compensated.

Thus, in Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 97 A.2d 813 (1953), the injured person was a telephone repairman with a permanent 25–30% limitation of motion of the knee. There was evidence that when he returned to his employment he was unable, because of his semi-frozen knee, to perform his duties fully, and that in an important part of his work, tracing "stuck" calls, he was able to do only one-half the amount of work performed by the average man in the industry because of the amount of bending required. There was also evidence of specific loss from inability to do overtime work. On that proof it was held proper to permit the jury to consider whether his economic horizons had been shortened because of the injuries.

To the same effect: Holton v. Gibson, 402 Pa. 37, 166 A.2d 4 (1960) where evidence of permanent skull injury causing severe headaches and memory deficiency; leg injury causing pain upon prolonged standing; inability to perform former duties as a guard; and inability to drive an automobile were held to be sufficient evidence of limitation of economic horizons for submission of impairment of earning power to the jury, notwithstanding higher earnings after the accident; and City of Philadelphia v. Philadelphia Transportation Co., 400 Pa. 315, 162 A.2d 222 (1960), in which permanent injury to a policeman's legs, making it impossible for him to run and interfering with his ability to lift (precluding assignment to duty on an emergency patrol wagon), was held sufficient evidence of inability to perform duties to warrant submission of the issue of impairment of earning power to the jury.

A further illustration of the same principle is found in Yeager v. Anthracite Brewing Co., 259 Pa. 123, 102 A. 418 (1917), in which plaintiff, an engineer in a brewery, as part of his duties was required to perform certain physical tasks. The accident in question caused tearing of the muscles and muscle fibres of his arm causing severe and permanent injury to it. Although plaintiff's earn-

[1] In addition there was testimony that the bones of the right leg were approximately $5/16''$ shorter than the bones of the left. Plaintiff's medical testimony as to the cause of the shortening of the bones was conflicting, one of plaintiff's medical witnesses testified that the condition was unrelated to the accident; another that it was caused by the accident.

ings after the accident were the same as before, there was evidence that his strength was substantially impaired and he was permanently unable to do as much or as heavy physical labor as he had been able to do before the accident. It was held that the jury could find from that evidence that plaintiff could be compelled in the future to accept less remunerative employment than if he had not been injured.

■■ There was no comparable proof in this case. When this accident happened, Miss Pasceri was a student at East Stroudsburg State Teachers College. Despite seven weeks hospitalization she was able to graduate in the normal time. From the time of graduation until the time of trial she had been employed full time as an elementary school teacher. She has not been disabled in the performance of any of her duties, although, as she stated, she has been inconvenienced by the hip deformity in that she is slower down somewhat in getting around the room to help the children and her back aches and causes her discomfort. One of her medical witnesses testified that if she does not wear a lift in the right shoe, as times goes on the uneven strain on the back muscles will cause the pain in the low back to remain. There was no medical testimony that, even without a lift in the shoe, the pain in the low back would at any time in the future increase to a degree which would interfere with the performance of Miss Pasceri's duties as a teacher. She was, at the time of trial, performing and apparently will be able to continue to perform in the future, full time duty as a teacher, although perhaps with some discomfort. Beyond that, Miss Pasceri is relatively small in stature, standing just under five feet tall and weighing less than ninety pounds. Plaintiff presented no evidence from which the jury could properly conclude that Miss Pasceri's hip deformity will restrict her ability to perform other types of work which, considering her age, physical characteristics, education and training, she would have been likely to do, but for the injury, for the rest of her life.

See Restatement, Torts § 924, comment (d) (1939). It is plaintiff's burden to establish impairment of earning capacity by a preponderance of the evidence. The proof on that issue was so lacking here that the jury would have been left entirely to guess and speculation to find and assess such impairment. This would have been improper. See Kmiotek v. Anast, 350 Pa. 593, 39 A.2d 923 (1944) and cases therein cited.

2. *Abuse of Discretion in Refusal to Postpone Trial.*

As earlier noted, the accident happened May 13, 1961. The case was called for trial and a jury selected late in the afternoon of May 25, 1966. Following the selection of the jury, counsel met with the trial judge in chambers. There was a lengthy discussion of the case during which settlement was discussed, but unsuccessfully. The meeting lasted until about 5:30 p. m. On that evening plaintiff's counsel apparently had Miss Pasceri examined by a neurologist and, on the morning of May 26, counsel reported that the neurologist "left word this morning with my office that this girl has a severe postconcussional picture, which is the result of a contusion of the brain, rather than a concussion, and that she needs extensive medical care in that respect." (N.T. 4) Counsel thereupon made application for a postponement of the trial until the fall to permit full exploration of alleged organic brain damage which had not theretofore been claimed, mentioned or suggested. Until then, in pleadings, in pretrial discovery and in the pretrial memorandum, plaintiff had described Miss Pasceri's injuries as a ruptured gall bladder and fractures of the pelvis with permanent hip deformity such as to interfere with and probably prevent childbirth and that Miss Pasceri had been advised that she would not be able to give a normal childbirth. In an amended pretrial memorandum filed on February 14, 1966, the day the pretrial conference was held, there was an intimation of possible emotional involvement when plaintiff listed as a witness "An expert psychiatrist to be named

later." On that same date a Pretrial Order was entered which, inter alia, granted permission to defendant to have Miss Pasceri examined within thirty days from the date of the order. No psychiatrist was ever named by plaintiff and, as a consequence, defendant did not have Miss Pasceri examined by a psychiatrist.

 Viewed against this background the request for postponement to pursue a completely new claim, brain damage, came entirely too late and was unreasonable. There were no new or unforeseen developments. The severity of the impact, the nature of the injuries sustained, and the symptoms, such as they were, had been known and had remained fairly constant over the period of five years during which Miss Pasceri was undergoing examination by many specialists in preparation for trial.[2] No reason appears why the brain damage, if it existed, had not been discovered and disclosed prior to trial. To have granted the request for postponement under such circumstances would have constituted an abuse of discretion.

3. *Refusal to Permit Testimony as to Inability to Conceive.*

Plaintiff contends in his brief that the court excluded testimony relating to Miss Pasceri's inability to carry a fetus through a normal nine months pregnancy as well as testimony indicating inability to conceive at all. There is no question that testimony relating to the former was admitted (e. g. see N.T. 294) and in fact, at counsel's request, that matter was specifically brought to the jury's attention before the jury retired to deliberate after the charge. (N.T. 674–75). This discussion will be limited, therefore, to the propriety of exclusion of testimony dealing with inability to conceive.

 There were only two references to child bearing in plaintiff's pretrial memorandum filed more than four and one-half years after the accident: Under "Principal Injury," following a fairly detailed description of the injury to the pelvis, plaintiff stated "The crushing type injuries to the pelvic area will interfere with and probably prevent childbirth;" and under "Present Disability," after a recitation of difficulties in walking, plaintiff stated "Minor plaintiff, who is single, has been told by competent medical authorities that because of her injuries she will not be able to give a normal childbirth." Plaintiff contends that by the use of the term "childbirth" in those two sentences he gave adequate pretrial notice of the claim that, as a result of the injuries sustained in the accident, the minor plaintiff would be incapable of conceiving a child.

It appears rather clearly that the claim of inability to conceive was an afterthought, much as the claim of brain damage was. By agreement there had been full exchange of medical reports prior to trial. Miss Pasceri had been examined over a period of several years by specialists on both sides in the fields of gynecology, obstetrics, x-ray, orthopedics and urology. In the reports which were exchanged no mention had ever been made as to inability to conceive. From the medical reports it could only be concluded that plaintiff's references to childbirth in the pretrial memorandum related to inability to give natural birth or, at most, inability to carry a fetus full term, and not to inability to conceive. This is the fair meaning of the language used in the pretrial memorandum, and that meaning is borne out by the contents of the pretrial medical reports.

 Pretrial conferences are held in this District under Standing Order dated October 23, 1958 pursuant to Rules 16 and 83 F.R.Civ.P. Under that Order plaintiff is required to set forth in writing, inter alia, the principal injuries sustained and the disabilities resulting therefrom. Matters not so revealed must be excluded if the pretrial procedures are to retain vitality and utility. In Payne v. S. S. Nabob, 302 F.2d 803 (3d Cir.), cert. denied, 371 U.S. 870, 83 S.Ct. 136, 9 L.

---

2. She has received no medical treatment for any condition since the summer of 1961.

Ed.2d 107 (1962), the Court of Appeals for this Circuit Considered that Standing Order. The language used in approving the policy underlying the Order is applicable here and clearly supports the exclusion of the proffered testimony:

"It has long been the law that attorneys at the pretrial stage 'owe a duty to the court and opposing counsel to make a full and fair disclosure of their views as to what the real issues at the trial will be.' [Citations omitted.] It is through such disclosure at pretrial that trial prejudice can be avoided.

\*　\*　\*　\*　\*　\*

"It is argued also that the court abused its discretion by refusing to permit amendment of the pretrial memorandum. This was not an easy decision for the trial judge. His inclination clearly, as is habitual with judges, was to help. And help he would have if, in his opinion, he could have done so fairly. But he was confronted with the realization that if he granted the request or allowed a continuance of the trial he was repudiating the whole pretrial theory and system as understood and followed in the Eastern District at a crucial period of its existence. Pretrial was finally on a firm foundation there. The judges had all given it generous and complete attention. This, with the gradual realization of the bar that pretrial was here to stay as a vital element of litigation practice and its resultant full cooperation, had made pretrial procedure routine in the Eastern District. One consequence was that directly and indirectly enormous relief was given the badly clogged trial list. It was admittedly vitally important to make sure that pretrial procedure would continue to function properly. One necessary phase of attaining that objective was, as expressed by the trial judge, 'We have come to the point of enforcing it very strictly.' In the circumstances he considered himself obliged to deny the motions to amend the pre-

trial memorandum with respect to liability allegations and witnesses. The refusal of appellant's motion for a continuance is in the same category." 302 F.2d at 807.

See also Wiggins v. City of Philadelphia, 331 F.2d 521, 526 (3rd Cir. 1964); Wirtz v. Hooper-Holmes Bureau, Inc., 327 F.2d 939 (5th Cir. 1964); Padovani v. Bruchhausen, 293 F.2d 546 (2d Cir. 1961).

### 4. *Medical Expenses.*

■　Plaintiff's next claim is that the court erred in refusing to permit the guardian to recover the medical expenses incurred by the minor's parents in the treatment of Miss Pasceri's injuries during her minority. That this cause of action under Pennsylvania law belongs to the parent[3] and not to the guardian, appears to be well settled by In re Mikasinovich, 110 Pa. Super. 252, 260–261, 168 A. 506 (1933) and Johnstone v. O'Connor & Co., 164 F.Supp. 66, 67–68 (E.D.Pa.1958). See Brough v. Strathmann Supply Co., 358 F.2d 374, 378 (3d Cir. 1966). The guardian made no attempt to recover the medical expenses for the parent; he attempted to recover them for the minor's estate. On that basis alone, Wilson v. American Chain and Cable Co., Inc., 364 F.2d 558 (3d Cir. 1966) is inapposite. *Wilson* was a suit by a parent both as natural guardian for the minor and in the parent's own right. It was held there that, although the parent's separate claim was lacking in jurisdictional amount, it could be entertained under the doctrine of pendent jurisdiction as ancillary to the claim on behalf of the minor. Significantly there was diversity of citizenship between the parent and the defendant. Since the guardian here made no attempt to recover for the parent, it is not necessary to consider the interesting question whether the doctrine of pendent jurisdiction should be further extended to entertain the parent's separate claim where, as here, a guardian was appointed for the minor for the sole and admitted purpose of creating diversity jurisdiction.

---

3. The parent in fact instituted suit in the state court for such damages.

■ Notwithstanding the ruling that the guardian would not be permitted to recover medical expenses, counsel requested permission to bring to the jury's attention the amount of the hospital bill for the limited purpose of bearing out the extensiveness of the care and treatment the minor received during her stay there. The custodian of the hospital records identified the bill and read off the amount ($1,280.35) to the jury. As soon as that was done the following cautionary instruction was given (N.T. 483):

> "THE COURT: Members of the Jury, I told you you could only make a limited use of this.
>
> This is not an item of damage for Miss Pasceri. The recovery of that hospital bill is for some other proceeding in some other court. We have no jurisdiction over that in this court.
>
> I allowed it in only for one purpose, so that you could use that together with the testimony as to the length of the stay as an indication that she was not there for just a matter of rest; she was being treated. That is all.
>
> It is a very limited use that you can make of it and I caution you to consider it only in that light."

These instructions were repeated in the charge to the jury (N.T. 663–64). Plaintiff's counsel made no objection at either time, but now he asserts that plaintiff was prejudiced by the suggestion of other litigation. If he was, it was of counsel's own doing and he cannot be heard to complain now, particularly in the absence of objection as required by Rule 51, F.R.C.P. Schabo v. County of Mercer, State of N. J., 333 F.2d 971 (3d Cir. 1964).

### 5. *Inadequacy of Verdict.*

Plaintiff asserts finally that the amount of this verdict was inadequate; that it was obviously a compromise,

brought about by confusion in the minds of the jury as to defendant's negligence; that the confusion was created by the court's charging on the emergency doctrine when it had not been requested to do so.

■■ Whether requested or not, it is the court's responsibility to give instructions on matters raised in the course of the trial. In his closing speech, defense counsel had alluded to the circumstances which might have caused defendant, while passing another car, to cut in sharply and run off the road, intimating that defendant may have been confronted with an emergency which caused the sudden swerving. (N.T. 618–19). The court's charge (N.T. 662–63) was given to eliminate any confusion that might have been thus created in the minds of the jury as to the proper application of the emergency doctrine. The purpose was to make clear that defendant could not be absolved for actions taken in the face of an emergency if the emergency was created by his own carelessness. The instructions on emergency were repeated when the jury returned for additional instructions on negligence. Certainly after the additional instructions, there could be no lingering doubt in the minds of the jury on the liability phase. There is no support, therefore, for counsel's assertion that the verdict reflected a compromise of doubtful liability.

■ Finally, as to the size of the verdict, counsel expresses shock at the low amount. Frankly the size of the verdict was not especially surprising. There were no special damages of any kind before the jury—no loss of wages, no hospital or medical expenses past [4] or future.[5] The full amount of the verdict was for compensation for the injuries, the pain, suffering, inconvenience and discomfort; the deformity; and the effects upon Miss Pasceri's child bearing capacity. On this last, the evidence was

---

4. See discussion, supra.

5. Plaintiff complains that the matter of future medical expenses was not sub-

mitted to the jury. Plaintiff presented no evidence as to the likelihood of the need for medical services in the future, or the nature of the services, cost, duration, etc.

by no means one sided. There were serious conflicts in the medical evidence as to the effect of the admitted pelvic and internal injuries upon that function. The extent of the impairment and the dollar amount to compensate for that and all the other effects of the injuries were matters peculiarly for the jury. The $25,000 verdict was within a predictable range for a jury's verdict.[6] I cannot say it was inadequate; it certainly does not shock my conscience.

The motion for new trial will be denied.

6. In recommending a somewhat higher figure in settlement (which plaintiff rejected) the court ventured its opinion as to the expectable range of the jury's verdict. This verdict was within that range.