**Payne v. City of Philadelphia**

*Daniel DelCollo, Jr.,* for plaintiff.
*Larry G. Cobb,* for defendant City of Philadelphia.

KATZ, *J.,* December 18, 1985 — This action is before the court on defendant City of Philadelphia's motion for summary judgment. Because we conclude that the city is immune from liability, the motion is granted and plaintiff's complaint against the city is dismissed.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035; see e.g., Thorsen v. Iron and Glass Bank, 328 Pa.Super. 135, 476 A.2d 928 (1984). In determining whether there are any material issues of fact, "the trial court must accept as true all well-pleaded facts in the non-moving party's pleadings and his other supporting evidence, and must give him the benefit of any proper inferences that can be drawn from these sources." Kent v. Miller, 222 Pa.Super. 390, 393, 294 A.2d 821 (1972).

Plaintiff commenced this action on June 19, 1981, seeking to recover damages for the destruction of his property at 917 S. 13th Street, Philadelphia, Pa. The loss occurred during the demolition of the neighboring property, the Mount Zion Baptist Church, located at 919-33 S. 13th Street, Philadelphia, Pa. The church was demolished by Carletti Construction Company, a private construction company. City employees however did inspect the cite on several occasions.

On or about October 16, 1980, plaintiff noticed cracks in the foundation of his house. He reported these observations to a City of Philadelphia building inspector who was inspecting the site. Several days later, on or about October 20, 1980, plaintiff telephoned the Department of Licenses and Inspection. An inspector again visited the site and plaintiff showed him the cracks. That same day, a stop work order was issued. According to the inspector's report, the basis for the order was that Carletti was excavating without a permit. Demolition was subsequently permitted to resume and on October 22, 1980, plaintiff's home collapsed.

The gravamen of plaintiff's complaint is that the city negligently failed to adequately supervise and inspect the demolition project. Specifically, plaintiff alleges that said accident resulted solely from the negligence and carelessness of the defendant by its officers, agents, servants and/or employees and consisted of the following:

"(a) Failed to properly inspect and supervise the demolition of the aforesaid property;

(b) Permitted the demolition to be done in a careless, negligent and unworkmanlike manner without due regard to the rights, safety, or property of the plaintiff;

(c) Failed to properly investigate the demolition contractor as to his qualifications to conduct a safe and workmanlike demolition;

(d) Failed to have the demolition contractor properly bonded or insured to protect the rights of the plaintiff;

(e) Failed to give adequate and proper warning to the plaintiff and other adjoining property owners of the danger of the said demolition;

(f) Disregarded the rights and safety of the plaintiff or other persons near the demolition site;

(g) and was otherwise negligent."

In its summary judgment motion, the city raised the issue of governmental immunity. Pursuant to the Political Subdivision Tort Claims Act,[1] political subdivisions are not liable for any damages on account of an injury to a person or property, except for damages resulting from activities falling into eight specified areas. 53 P.S. §5311.201. Plaintiff argues that his claim falls under three of the exceptions to immunity: (1) operation of motor vehicle; (2) control of real property; (3) control of personal property. We will discuss each of plaintiff's arguments seriatim.

## I. MOTOR VEHICLE EXCEPTION

Plaintiff first argues that his loss arose out of the operation of a motor vehicle in the possession or control of the political subdivision.[2] We agree with the plaintiff that the bulldozer which was utilized by Carletti during the demolition meets the act's definition of a motor vehicle.[3] However, we reject plain-

---

1. This action is governed by the Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.101-5311.803. (effective January 27, 1979), since repealed by Section 333 of the Jara Continuation Act of October 5, 1980, P.L. 693, 42 P.S. §200.43 (effective December 5, 1980). These provisions are now found in the Actions Against Local Parties Act, of October 5, 1980, P.L. 693, §221, 42 Pa. C.S. §8541-8564 (effective December 5, 1980). Plaintiff mistakenly cites the Actions Against Local Parties Act as the applicable statute. However, since the two acts are substantially similar references to either act or to cases applying either act are acceptable. See Evans v. City of Pittsburgh, 89 Pa.Commw. 626, 492 A.2d 1209 (1985).

2. The operation of any motor vehicle in the possession or control of the political subdivision: As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereof, including vehicles operated by rail, through water or in air. 53 P.S. §5311.201(b).

3. See footnote 2, supra.

tiff's argument that the bulldozer was in the possession or control of the city.

Plaintiff argues that for purposes of §5311.202, the city's regulation of the construction site is equivalent to controlling the site and the bulldozer. In support of this proposition, plaintiff cites Black's Law Dictionary (5th Ed.), Smith v. Lancaster County Tax Claim Bureau, 23 D.&C. 3d 734 (1982) and In re Mikasinovich, 110 Pa.Super. 252, 168 Atl. 506 (1933). We do not find these cases persuasive. Smith, which relied on Black's Law Dictionary, actually examined the personal property exception. Although there is language in Smith which might support the plaintiffs' position, neither the facts nor the rationale are on point. In Smith, the court held that a county tax claim bureau is immune from liability for the loss of a mortgage interest following a tax sale of real estate because the bureau is not in "control" of plaintiff's mortgage within the terms of 42 Pa. C.S. §8542(b)(2). The court defined "control" as the right to exercise a directing or governing influence, and asserted that the bureau could not dictate the fate of plaintiffs' mortgage. Applying this definition to the case before it, the court reasoned that the mortgage was divested because it was recorded subsequent to the tax levy, a circumstance not within the control of the tax claim bureau.

We also do not find Mikasinovich convincing. In Mikasinovich, the superior court held that an orphans' court has control of the compromise, settlement, and release of a minor's action. Immunity was not an issue in Mikasinovich and its rationale is therefore inapplicable to the case at bar.

On the other hand, we find the case of Walters v. Commonwealth, 81 Pa. Commw. 503, 474 A.2d 66 (1984) persuasive. Walters applies §842(b)(1) of the Sovereign Immunity Act, which is identical to

§5311.202(b)(1) of The Political Subdivision Tort Claims Act, the motor vehicle liability exception. The court held that the Department of Transportation (DOT) was immune from liability in an action brought by a woman injured in an accident with a person whose driving privileges had been suspended. In reaching this conclusion, the court reasoned that DOT did not have control, in any functional sense, over an automobile driven by a person whose operating privileges had been suspended following his conviction for driving under the influence of alcohol.

Similarly, we find that the city did not control, in a functional sense, the bulldozer or the driver of the bulldozer.

## II. REAL PROPERTY EXCEPTION

Plaintiff next argues that his loss arose out of the care, custody or control of real property in the possession of a political subdivision.[4] The city referred this to several trial court opinions which held that the city's negligent failure to inspect or condemn privately owned property did not fall under this exception or any exception to a municipality's immunity. In Kennedy v. Cervo and City, (C.P. Philadel-

---

4. The care, custody or control of real property in the possession of the political subdivision, except that the political subdivision shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the political subdivision. As used in this paragraph, "real property" shall not include trees, streets, sidewalks, traffic signs, lights and other traffic controls, street lights and street lighting systems and facilities of steam, sewer, water, gas and electric systems owned by the political subdivision and located within rights of way. 53 P.S. §5311.202(b)(3).

phia, February term, 1983, no. 3838), the court granted the city's preliminary objections to the complaint, which the court summarized as alleging failure to inspect and prosecute a violation of local ordinances and permitting the improper connection of storm water drainage to the available public sewer. Similarly, in Setzer v. City, (C.P. Philadelphia, August term, 1983, no. 2871), plaintiff sought damages from the city arising out of its failure to condemn and close a privately owned building. In sustaining the city's preliminary objections, the court stated "that the only injuries which are compensable are those which actually result on the local agency's property." Id. at 3. Accord Philadelphia Scale Corp. v. City of Philadelphia, (C.P., Philadelphia, January term, 1982, no. 443) (Failure to inspect and correct conditions on privately owned property is not one of the exceptions enumerated in The Political Subdivision Tort Claims Act.); Cotton v. Dickstein (C.P. Philadelphia, June term, 1981, no. 4643).

Plaintiff attempts to distinguish these cases, arguing that the city, by virtue of its inspector's power and intention to exercise control over the property, had constructive possession. Plaintiff cites the Black's Law Dictionary (5th Ed.) definition of "possession":

"The law, in general, recognizes two kinds of possession: actual possession and constructive possession . . . A person who, although [not] in actual possession, knowingly has both the power and the intention at a given time to exercise *dominion* or *control* over a thing, either directly or through another person or persons, is then in constructive possesion of it . . . If two or more persons share actual or constructive possession of a thing, possession is joint." (Emphasis added.)

We have found no cases applying the doctrine of constructive possession to the real property exception to immunity, nor are we persuaded that the doctrine should be applied. The legislature provided limited waivers to its broad grant of immunity. We do not believe it intended to waive liability for claims arising out of the negligent inspection of private property.

## III. PERSONAL PROPERTY EXCEPTION

Lastly, plaintiff invokes the personal property exception which holds a city liable for losses arising to personal property in the possession or control of the political subdivision.[5] In support of this claim, plaintiff relies on an affidavit in which he avers that the City inspector promised and assured him that the City was safeguarding his property and would prevent it from being damaged as a result of the demolition/excavation project. The inspector temporarily stopped the bulldozers. Although the work was allowed to resume, the inspector again assured Mr. Payne that the city was protecting his property. (See affidavit attached to plaintiff's response to defendant's motion for summary judgment.)

Assuming, as we must, that the above averments are true, we still fail to find that plaintiff's personal property, such as his furniture and clothing, were under the control or possession of the city. Promises and assurances made by an inspector and reliance thereon by a property owner have no effect on

---

5. The care, custody or control of personal property of others in the possession or control of the political subdivision. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the political subdivision. 53 P.S. §5311.202(b)(2).

whether the personal property was actually in the control or possession of the city. In addition, we reject plaintiff's argument that the city's power to inspect and regulate the neighboring property gave it control or possession over his personal property. See discussion, supra at 67-69.

## CONCLUSION

Although this court discussed each potentially applicable exception separately, as did plaintiff, plaintiff's basic argument is that the power to inspect and regulate is equivalent to control or possession. We reject this argument, finding instead that the negligent inspection of private property does not fit under any of the exceptions to political subdivision immunity. Thus, since the city is immune from liability, its motion for summary judgment is granted.