## APPEAL OF JOSEPH T. WILLIAMS, GUARDIAN.

FROM THE DECREE OF THE ORPHANS' COURT OF MONTGOMERY
COUNTY.

Argued February 2, 1888—Decided February 27, 1888.

Immediately upon his appointment, a guardian agreed in writing with the father of his wards that the latter should collect and receive the wards' estate, manage the investment of the same and the income thereof, and that the guardian should charge no commissions except upon the trust funds which might pass into his hands in the event of the death of the father: *Held*,

That, for personal services rendered to his wards' estate, the guardian was entitled to a reasonable and just compensation, notwithstanding said contract and though the father, still living, had had the entire management of the funds of said estate.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 17 July Term 1887, Sup. Ct.

On January 4, 1886, Joseph T. Williams filed his account as guardian of seven minor children of Charles Williams, charging himself with receipts of cash from the executors of the will of Joseph Williams, Sr., deceased, aggregating $70,430.32, and taking credit inter alia with "commissions due accountant, $3,521.52." To this account exceptions were filed.

Before *Mr. Jacob V. Gotwalts*, appointed auditor to hear and determine the exceptions and report distribution, it was made to appear that the minor children of Charles Williams were the residuary legatees in the will of Joseph Williams, Sr., deceased, and that at the instance of their father, who was an executor of said will, his nephew, Joseph T. Williams, was appointed their guardian, with whom the father then made the following agreement:

This is to certify and declare, that Charles Williams has assumed and will assume the collection and receipt of all moneys

that have accrued or which may accrue to his children under and by virtue of the last will and testament of their grandfather, Joseph Williams, deceased, and the investment of the same ; also the collection of the interest thereon ; and that Joseph Williams, guardian of his said children, has deposited in his hands the securities in which the moneys of his said wards have been invested ; and Charles is to keep him, the said guardian, clear of all liability or responsibility in relation to the trust funds belonging to the said children ; and the said Joseph has also agreed that his executors or administrators shall not charge any commissions, except in the event of the decease of the said Charles, and the actual performance of the trust devolves on him or his representatives, then to be allowed to charge commissions on the funds which may at the time be in their trust ; it is further agreed and distinctly understood that said representatives shall not charge under any plea or circumstances more than two per cent. commissions. Witness our hands and seals this 1st day of 4th month, 1864.

CHARLES WILLIAMS, [L. S.]<br>JOSEPH WILLIAMS.   [L. S.]

The residuary estate had been paid over in money except a balance of $14,430.32, which was the purchase money for a farm conveyed by the executors to Joseph T. Williams, guardian.   All the estate, including the item of $14,430.32, as cash, was charged to the guardian in his account ; and although all the cash receipts had been managed and invested by Charles Williams, the guardian had rendered personal services to the estates of his wards, their character appearing hereafter in the opinion of this court.

The children having arrived at full age, the father, representing that he had fully paid all the wards, desired that the farm should be conveyed to them by the guardian, which the latter refused until he had received compensation for his services as guardian and releases from his wards.   The auditor, inter alia, reduced the commissions to be allowed to the accountant to $1,050, and recommended a decree that the guardian convey the farm held in his name on receipt of the proper releases from his late wards.

Various exceptions were filed to the auditor's report on the

Arguments.

part of the guardian, and others by his wards. On hearing, the court, BOYER, P. J., sustained the exceptions on the part of the wards, disallowing all commissions or compensation to the accountant, and entered a decree ordering that the guardian, on payment or tender to him of certain costs and expenses he had paid, should execute and deliver a conveyance of the real estate held in his name for his late wards' benefit, etc.

The accountant then took this appeal, specifying that the court erred:

1. In not ruling that the agreement of April 1, 1864, was against public policy and void.

2, 3. In ruling that the said agreement debarred the accountant from the commissions claimed in the account.

4. In disallowing the sum of $1,050 recommended by the auditor as compensation to the accountant.

5. In decreeing in this proceeding a conveyance of the real estate held in the name of the accountant as guardian.

*Mr. J. P. Hale Jenkins*, for the appellant:

The agreement of April 1, 1864, was against public policy and void: Bowers v. Bowers, 26 Pa. 74. At all events, it is well settled that a trustee or guardian is entitled to some compensation, even though he never received the trust money: Bell's Est., 2 Pars. 200.

*Mr. Henry C. Boyer* (with him *Mr. Edward Haugh*), for the appellee:

1. It is not disputed that a guardian may waive his right of commissions. And when a trustee has paid over the trust fund without claiming a deduction for commissions, he will not afterwards be permitted to demand them: Barton's Est., 1 Pars. 24.

2. Parties implicated in an executed illegal transaction have no remedy against each other: Whart. Cont., § 353; Lestapies v. Ingraham, 5 Pa. 81; Fox v. Cash, 11 Pa. 207; Gisaf v. Neval, 81 Pa. 354.

3. The court had jurisdiction to decree the conveyance. In matters within its jurisdiction, the Orphans' Court proceeds upon the principles of a court of chancery: Guier v. Kelly, 2 Binn. 299; Commonwealth v. The Judges, 4 Pa. 301; Kittera's Est., 17 Pa. 423.

OPINION, MR. JUSTICE WILLIAMS :

This case involves but a single question. The appellant was duly appointed guardian of the minor children of Charles Williams by the Orphans' Court of Montgomery county on June 15, 1863. His wards were legatees under the will of their grandfather, Joseph Williams, and entitled as such to sums amounting in the aggregate to over $70,000. Their father, Charles Williams, was one of the executors of the will of Joseph. As father of the legatees and executor of the will under the provisions of which the legacies were to be paid, he was, under the law and the rules of the Orphans' Court, ineligible to appointment as guardian. He accordingly secured the appointment of his nephew, Joseph T. Williams, the appellant. But it was his purpose not to surrender the custody and management of the fund or allow the guardian to discharge the duties which his appointment devolved on him, beyond what was absolutely necessary. He accordingly obtained from the appellant in April following his appointment the contract upon which the wards now deny to their guardian a single farthing's compensation, and on the construction of which this case depends. The contract is as follows : [quoted in full.]

The auditor finds that in accordance with this agreement the moneys of his wards were immediately turned over by the appellant to Charles Williams, who invested them and took entire charge of them until his children severally came of full age. He also finds that the appellant performed his duty as guardian in all other respects, representing his wards in the Orphans' Court, examining the security offered for loans, and executing such papers as required his signature. From these facts he concludes and recommends to the Orphans' Court that the appellant should be held to the terms of his agreement of April 1, 1864, and allowed no commissions upon the moneys belonging to his wards, but that for other services he was entitled to a reasonable compensation which he fixes at $1,050. This seems to be in harmony with the agreement of April 1, 1864, and with the justice of the case.

There were many duties devolving on the guardian that he could not discharge except in person. These the agreement did not touch. It simply provided that the management of the fund and the commissions to be earned thereby should be

turned over to Charles Williams. Every other duty which his appointment cast upon him he was to perform in person, and there is nothing in the agreement nor in the circumstances to prevent his charging a reasonable compensation for his services. It is conceded that he discharged his trust with fidelity, and that for twenty-three years he has in many ways rendered important services to his wards. When he asks for compensation his wards reply in effect, " because you agreed to surrender part of your compensation for our benefit, you shall have nothing." But it does not follow as we have already said, that an agreement not to charge for services that Charles Williams undertook to perform in his stead, affords the slightest reason for refusing to the guardian compensation for services that he had to render by virtue of his appointment, and that Charles could not have relieved him from, even if he had undertaken to do so. It is very clear that the appellant was entitled to a reasonable compensation, and the auditor finds that $1,050 is reasonable. It is not alleged that this sum is not a fair compensation if a compensation is to be allowed, but the exceptants insist that under the agreement of April 1, 1864, the appellant is precluded from asking any compensation whatever.

> The decree of the Orphans' Court is now reversed in so far as it denies the appellant the compensation recommended by the auditor, and record remitted for final decree in conformity with this opinion.