**Ayden SHAFFER–DOAN, a minor, by his parents and natural guardians, Timothy DOAN and Karen Shaffer, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Nov. 3, 2008.

As Amended Dec. 18, 2008.

---

Charles, L. Becker, Philadelphia, for petitioner.

Jason Manne, Sr. Asst. Counsel, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court in our original jurisdiction is a Motion for Summary Judgment

(Motion) filed on behalf of Petitioners, Ayden Shaffer–Doan (ASD), a minor, by his parents and natural guardians, Timothy Doan and Karen Shaffer (Parents) to the Petition for Review in the Nature of a Complaint for Declaratory Judgment (Petition for Review) filed by Petitioners. Petitioners ask this Court to declare that: (1) Sections 1404 and 1409 of the Fraud and Abuse Control Act (FACA),[1] 62 P.S. §§ 1404, 1409, are inapplicable in this case such that the Department of Public Welfare (DPW) may not obtain reimbursement of payments made by it through its Medical Assistance (MA) Program from the settlement proceeds of *Shaffer–Doan v. Gout, et. al.*, (Clearfield County, No. 05–418–D filed March 24, 2005); and (2) Pennsylvania's common law should change so that a plaintiff such as ASD possesses an independent right to recover medical expenses incurred during the period of his minority. DPW asks this Court to order the payment of DPW's lien in the amount of $47,392.01 for monies it expended for ASD's medical care.

## FACTUAL BACKGROUND

### *Litigation Before the Court of Common Pleas*

ASD, a minor, by his Parents, and Parents, in their own right, filed a civil action complaint sounding in medical malpractice in the Court of Common Pleas of Clearfield County (trial court). The case arose out of the negligent medical care and treatment provided to ASD by doctors and a medical hospital (Defendants) with regard to the detection and treatment of seizures that ASD was suffering.[2] Because of the allegedly negligent conduct, ASD suffered cardio-pulmonary arrest resulting in extensive and permanent brain injury. In the complaint, ASD sought compensatory damages for medical expenses, which he anticipates incurring *after* he reaches the age of majority. Additionally, incorporated in the complaint were claims made by Parents, in their own right, seeking recovery for past, present, and future medical and medically-related expenses they have incurred and are expected to incur during the period *before* ASD reaches the age of majority. A portion of ASD's medical expenses was paid through DPW's MA Program totaling $47,392.01, which is the amount of money at issue in this case.

On January 20, 2007, DPW asserted a claim for MA reimbursement of monies expended for medical care for ASD in the amount of $47,392.01 pursuant to Section 1409 of FACA.[3] Ten days later, the trial court granted the Defendants' motion for partial summary judgment as to all claims brought on behalf of Parents and ordered that all claims filed on behalf of Parents, in their own right, be stricken, based on the parents' failure to bring their claim within the prescribed two-year statute of limitation period.[4]

The trial court did not address whether ASD could pursue the MA reimbursement claim in his own right. On February 8, 2007, after extensive negotiations, a global settlement agreement was reached in the amount of 14.8 million dollars, which called

---

1. Act of June 13, 1967, P.L. 31, added by the Act of July 10, 1980, P.L. 493, *as amended.*

2. We draw these facts from the Petitioners' Petition for Review.

3. 62 P.S. § 1409.

4. Parents admitted that, pursuant to Pennsylvania law, the statute of limitations barred their claim for recovery in the medical malpractice action. (Plaintiffs' Response in Opposition to Motions for Partial Summary Judgment as to all Claims Brought on Behalf of Parents (Response in Opposition), ¶ 14, Exhibit C to Petitioners' Motion.)

for the establishment of a Special Needs Trust for ASD, funded by all the settlement monies after attorney fees and costs have been deducted. The final settlement agreement does not set out any specific amount to pay DPW, but contains a provision under which Petitioners agreed to pay "any and all valid liens that have been asserted and/or which could be asserted for reimbursement of any medical benefits [provided to ASD]." (Full and Final Release, DPW Summary Judgment Appendix at 88a.)

Counsel for Petitioners advised counsel for DPW that, because Parents did not recover for any past medical care, Petitioners would not repay the lien to DPW for past medical expenses. Although counsel for DPW disagreed with this contention, DPW nonetheless agreed not to object to the establishment of the Special Needs Trust from the settlement proceeds of the case, and permitted Petitioners' counsel to escrow the full amount of DPW's lien, totaling $47,392.01, pending resolution of the disputes concerning repayment of the lien. On April 23, 2007, the trial court approved the settlement and ordered distribution of settlement monies to the Special Needs Trust on behalf of ASD. The trial court also included a provision allowing Petitioners' counsel to escrow the amount of $47,392.01 pending resolution of all claims with DPW.

### Litigation in the Commonwealth Court's Original Jurisdiction

On May 2, 2007, Petitioners filed a Petition for Review in this Court, seeking a declaratory judgment that DPW may not assert a lien in the amount of $47,392.01 against the Special Needs Trust. Essentially, Petitioners assert that Parents received no recovery for the monies expended by DPW for past medical care and, therefore, DPW should not receive repayment. Further, Petitioners assert that it is improper for DPW to attempt to enforce a lien for monies not recovered from a third party via settlement of a medical malpractice action because the monies would come out of funds that are to be set aside for ASD's *future* needs. Accordingly, Petitioners ask this Court to declare Sections 1404 and 1409 of FACA, 62 P.S. §§ 1404, 1409, inapplicable in this case since the Parents' claims were dismissed.[5]

5. On June 7, 2007, DPW filed, in the trial court, a Motion to Vacate Settlement and Intervene, but suggested that the proceedings on the motion be stayed pending disposition of the Petition for Review before this Court with regard to DPW's right to a lien. On June 11, 2007, DPW filed the Preliminary Objection and Motion to Transfer arguing that this Court does not have subject matter jurisdiction over the declaratory judgment action because administrative remedies have not been exhausted. Specifically, DPW argued that, pursuant to 55 Pa.Code § 275.1(a)(4)(i)(F), an appeal should have first been taken to DPW's Bureau of Hearings and Appeals (BHA) and, because it was not, this Court should transfer the matter to the BHA as the proper forum to dispute DPW's lien. This Court, in a single-judge opinion, denied DPW's preliminary objections, concluding that:

First, this Court notes that there has been no departmental action taken in this case from which Petitioners could appeal. Rather, each and every motion or request in this case has been filed with the trial court. Although DPW is correct that the Code offers one avenue for seeking repayment of MA benefits via requesting a fair hearing before the BHA, this is not an exclusive or mandatory remedy. This is supported by case law, which was presented to this Court, as well as case law revealed from our own independent research. *See Cataldi v. Methodist Hospital*, 747 A.2d 1239 (Pa.Super.2000); *Department of Public Welfare v. Thomas*, 129 Pa.Cmwlth. 528, 566 A.2d 365 (1989); and *Chiesa v. Fetchko*, 318 Pa.Super. 188, 464 A.2d 1293 (1983) (cases in which DPW asserted its right to repayment of a lien pursuant to 62 P.S. § 1409 in the courts, as opposed to BHA). Further,

DPW answered Petitioners' Petition for Review and filed a new matter asking this Court to order the payment of DPW's lien in the amount of $47,392.01.

■ The parties exchanged discovery and, following the close of discovery, Petitioners filed their Motion.[6] In the Motion, Petitioners requested relief in the form of a declaration that DPW could not recover its lien under current Pennsylvania law. However, Petitioners also raised a new request, and asked that the law be changed so that a plaintiff, such as ASD, may possess an independent right to recover medical expenses incurred during the period of his minority.[7] DPW filed a brief in opposition to the Motion. DPW notes that it did not file a cross-motion for summary judgment in the interest of getting the case argued before this Court speedily. This Court heard argument from both sides. The issue before the Court is whether DPW is entitled to payment of its lien.[8]

> DPW's assertion that this Court lacks subject matter jurisdiction because Petitioners failed to exhaust administrative remedies is wholly inconsistent with its assertion at the argument that the trial court is a proper forum to determine DPW's right to the lien. Finally, we note that the issue raised before this Court in the Petition for Review is one of statutory interpretation, which clearly falls within the Declaratory Judgment Act. 42 Pa.C.S. § 7533.
>
> Shaffer–Doan v. Department of Public Welfare, 231 MD 2007, slip op. at 5–6 (filed July 25, 2007) (J. Cohn Jubelirer). Accordingly, the case before this Court proceeded.

6. In August 2007, DPW served Notices of Intent to Serve a Subpoena to Produce Documents and Things for Discovery on both the Defendants in the malpractice action and on an insurance company that insured certain Defendants. These subpoenas required the recipients to produce documents relevant to the settlement agreement, the purpose of which was to uncover whether counsel in the malpractice action had agreed that the settlement agreement would include damages for ASD's medical expenses paid by DPW. Those who were subpoenaed collectively filed a single set of documents that were responsive to DPW's requests.

7. Before the trial court, in their response to the motion for summary judgment that the medical providers filed as to Parents' claims, the Parents indicated that they would be seeking relief akin to this request for relief:

> Should the [trial] court rule in Defendant's favor [and dismiss Parents' claims], Plaintiffs intend to challenge in the appellate courts the two (2) year limitation to [P]ar-ent-plaintiffs' cause of action due to its non-derivative status because the cause of action arises from the same set of operative facts and forced repayment of Pennsylvania's lien is unjust and inequitable. . . .
>
> Because payments have been and will continue to be made by the Department of Welfare for medical care to the minor-plaintiff Ayden, these payments may be the responsibility of the minor-beneficiary. Consequently, minor-plaintiff's cause of action necessarily must include reimbursement for medical assistance payments made by the Pennsylvania Department of Public Welfare . . . on his behalf prior to age 18. . . .

(Response in Opposition ¶ 9.)

8. Sitting in original jurisdiction, we look to the rules of civil procedure for the standard to determine whether we should grant summary judgment. *See Wings Field Preservation Associates, L.P., v. Department of Transportation,* 776 A.2d 311, 314 n. 2 (Pa.Cmwlth.2001). Rule 1035.2 of the Pennsylvania Rules of Civil Procedure provides in part as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential

At its essence, the argument before this Court is that, since Parents failed to bring their claim within the two-year statute of limitations, DPW cannot recover the lien. This position is based on the premise that only parents can recover for a minor's medical expenses and that, since DPW's lien is for only a minor's medical expenses, DPW is precluded from recovering. Petitioners argue that because the settlement did not provide compensation "for any past medical care, there should be no re-payment to [DPW] for past medical expenses." (Letter from Petitioners' Counsel Leon Aussprung to Andrew Coates of DPW, (March 7, 2007), Exhibit G to Petitioners' Motion.) In support of this position, Petitioners rely on *Bowmaster v. Clair*, 933 A.2d 86 (Pa.Super.2007), *petition for allowance of appeal granted*, —— Pa. ——, 959 A.2d 900 (2008), in which the Superior Court concluded that parents, and not the injured minor child, were the intended beneficiaries of MA benefits from DPW for the minor child's medical expenses.

In response, DPW argues that *Bowmaster* was wrongly decided because it was based on the faulty premise that a child cannot recover benefits. Additionally, DPW notes that *Bowmaster* is not binding on this Court. DPW also argues that the settlement includes the MA expenses paid by DPW and, thus, it should be reimbursed. We also note that DPW, in its New Matter, questions the sufficiency of notice that Petitioners provided it as to both the litigation and the settlement negotiations. (New Matter ¶¶ 9–13.) Petitioners, in their response to these allegations, denied these notice allegations to the extent that they were factual. (Petitioners' Response to DPW's New Matter ¶¶ 9–13.)

Both *Bowmaster* and the present case involve whether DPW is entitled to reimbursement under Section 1409 of FACA. We begin addressing this argument by reviewing the applicable statutory language.

## LEGAL BACKGROUND

■ The overarching purpose of FACA is to authorize DPW to obtain compensation from third parties for benefits DPW paid on behalf of a person injured by the third parties:

> Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u, allows the states broad discretion in developing Medicaid programs. Under state law DPW is the sole agency charged with administering Medicaid. Section 201 of the Public Welfare Code ... 62 P.S. § 201. As a condition for receipt of continued federal funding, DPW must vigorously seek reimbursement from third parties liable for causing injuries to Medicaid recipients....

> Pursuant to this federal mandate, the Pennsylvania General Assembly enacted the Fraud and Abuse Control Act of 1980....

*Miller v. Lankenau Hospital*, 152 Pa. Cmwlth. 266, 618 A.2d 1197, 1198 (1992). Section 1409's numerous subsections provide detailed provisions as to how DPW can recover monies under a variety of different situations. Under the statutory language of this section, DPW can recover MA payments either by commencing an action against the third party and/or its insurer or by intervening during the pendency of a beneficiary's civil action.[9] The

---

to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. No. 1035.2.

**9.** Section 1409(b)(1) provides, in pertinent part:

(b)(1) When benefits are provided or will be provided to a beneficiary under this section

term "beneficiary" is defined as "any person who has received benefits or will be provided benefits under this act because of an injury for which another person may be liable. It includes such beneficiary's guardian, conservator, or other personal representative, his estate or survivors." 62 P.S. § 1409(b)(13). DPW is authorized to settle any claims it has with the third-party tortfeasor.[10] The statute sets forth specific procedures for DPW to notify the beneficiary when DPW initiates a suit[11] and, conversely, specific procedures for a

beneficiary to notify DPW when the beneficiary brings a suit.[12] The purpose of these notification provisions is to afford the notified party the opportunity to intervene in the other suit and to provide the opportunity for the suits and claims to be consolidated.[13] The statutory language also provides specific procedures to follow to ensure satisfaction of DPW's lien following settlement of a claim regardless of whether the claim is brought by both DPW and the beneficiary,[14] or just the beneficia-

---

10. because of an injury for which another person is liable [DPW] shall have the right to recover from such person the reasonable value of benefits so provided. The Attorney General or his designee may, at the request of [DPW], to enforce such right, institute and prosecute legal proceedings against the third person or insurer who may be liable for the injury in an appropriate court, either in the name of [DPW] or in the name of the injured person, his guardian, personal representative, estate or survivors.
62 P.S. 1409(b)(1).

10. Subsection (b)(2) of Section 1409 provides that:
(2) [DPW] may:
(i) compromise, or settle and release any such claims; or
(ii) waive any such claim, in whole or in part, or if [DPW] determines that collection would result in undue hardship upon the person who suffered the injury, or in a wrongful death action upon the heirs of the deceased.
62 P.S. § 1409(b)(2).

11. Subsection (b)(6) of Section 1409 provides that:
If an action or claim is brought by [DPW], written notice to the beneficiary, guardian, personal representative, estate or survivor given pursuant to this section shall advise him of his right to intervene in the proceeding, and his right to recover the reasonable value of the benefits provided.
62 P.S. § 1409(b)(6). We note that some language in subsections (b)(5)-(7) was recently modified by the Act of July 4, 2008, P.L. 557, § 9, effective September 2, 2008. These modifications are not applicable to this case.

12. The first portion of subsection(b)(5) of Section 1409 provides that:
(5) If either the beneficiary or [DPW] brings an action or claim against such third party or insurer, the beneficiary or [DPW] shall within thirty days of filing the action give to the other written notice by personal service, or certified or registered mail of the action or claim. Proof of such notice shall be filed in such action or claim.
62 P.S. § 1409(b)(5).

13. The second portion of subsection 1409(b)(5) provides that:
If an action or claim is brought by either [DPW] or beneficiary, the other may, at any time before trial on the facts, become a party to or shall consolidate his action or claim with the other if brought independently.
62 P.S. § 1409(b)(5).

14. Section 1409(b)(7)(ii) provides that:
(7) [I]n the event of judgment, award or settlement in a suit or claim against such third party or insurer:
. . . .
(ii) If the action or claim is prosecuted both by the beneficiary and [DPW], the court or agency shall first order paid from any judgment or award, the reasonable litigation expenses incurred in preparation and prosecution of such action or claim, together with reasonable attorney's fees based solely on the services rendered for the benefit of the beneficiary. After payment of such expenses and attorney's fees, the court or agency shall apply out of the balance of such judgment or award an amount of benefits paid on behalf of the beneficiary under the medical assistance program.

ry.[15] Additionally, the statutory language specifically obligates any person with knowledge of DPW's interest to first pay the Commonwealth, and provides that a person who knowingly violates this provision is personally responsible for DPW's claim.[16] The clear impact of this subsection is to afford DPW as broad a means of relief as possible, in part, as noted in *Lankenau Hospital*, to keep DPW from running afoul of the Federal prohibition against "Medicaid ... being the *primary* insurance when a third party ... is legally liable for the costs of the injured party's medical expenses." *Lankenau Hospital*, 618 A.2d at 1198.

## DISCUSSION OF CASE LAW

With this background about the statutory language at issue, we turn to the arguments raised by the parties. Petitioners rely primarily and extensively on the Superior Court's analysis of Section 1409 in *Bowmaster*. We first discuss *Bowmaster*, and then address the precedent on which it relies.

### The Superior Court's Recent Decision in Bowmaster

In *Bowmaster*, the Superior Court reversed an order granting reimbursement to DPW in satisfaction of DPW's subrogation lien. In that case, a minor and her parents commenced a medical malpractice suit alleging that defendants were negligent and the proximate cause of the minor's injuries at birth. The suit was filed eight years after the minor's birth, beyond the two-year statute of limitations applicable to a parental claim. DPW paid for the minor's medical expenses through the MA Program and asserted a right to reimbursement under Section 1409(b) when the case was settled. The issue presented was whether DPW could be reimbursed for medical services provided to the minor when the parents' claim for medical expenses was time-barred. The Superior Court stated that "a dispute arises as to how provisions found in the Fraud and Abuse Control Act, 62 P.S. § 1401 *et. seq.*, are to be applied in such a situation." *Id.*, 933 A.2d at 88 (relying on *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 561 A.2d 1261, 1262 (1989)). The Court noted that precedent has established that a minor's injury by negligence leads to two distinct causes of action: one for the minor's parents and one for the minor. *Bowmaster*, 933 A.2d at 88. Among the items the parents can recover are medical expen-

---

62 P.S. § 1409(b)(7)(ii).

**15.** Section 1409(b)(7)(i) provides that:

(7) [I]n the event of judgment, award or settlement in a suit or claim against such third party or insurer:
(i) If the action or claim is prosecuted by the beneficiary alone, the court or agency shall first order paid from any judgment or award the reasonable litigation expenses, as determined by the court, incurred in preparation and prosecution of such action or claim, together with reasonable attorney's fees, when an attorney has been retained. After payment of such expenses and attorney's fees the court or agency shall, on the application of [DPW], allow as a first lien against the amount of such judgment or award, the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.
62 P.S. § 1409(b)(7)(i).

**16.** Section 1409(b)(9) provides that:

(9) Unless otherwise directed by [DPW], no payment or distribution shall be made to a claimant or a claimant's designee of the proceeds of any action, claim or settlement where [DPW] has an interest without first satisfying or assuring satisfaction of the interest of the Commonwealth. Any person who, after receiving notice of [DPW]'s interest, knowingly fails to comply with the obligations established under this clause shall be liable to [DPW], and [DPW] may sue to recover from the person.
62 P.S. § 1409(b)(9).

ditures made by the parents on the minor's behalf during the child's minority; medical expenses post-majority are recoverable only by the minor. *Id.* The Superior Court reasoned that, since the parents are financially responsible for the minor child's medical care, the parents are the true beneficiaries of DPW's payments:

> Clearly, parents have an obligation to support their children until the age of majority is reached. *As it was the parents' obligation,* medical expenses were paid by DPW to the parents to care for Emily. Accordingly, *the true beneficiary of the benefits received prior to Emily's majority appears to be her parents* as it was they who had the support obligation in the first place. Had the parents received a recovery, we would have agreed that DPW would have been entitled to that amount against the settlement made regardless of how the funds were allotted. That is not the situation we are presented with here as parents did not seek recovery. Nothing in the statute allows us to ignore long-standing principles, particularly the principles stated above related to the statute of limitations and what recovery is possible by a minor during his or her period of minority and what recovery could be sought by the minors' parents. DPW asks us to simply ignore the statute of limitations and *the fact that Emily could not recover these medical expenses.*

*Bowmaster,* 933 A.2d at 90–91 (emphasis added) (citation omitted). Thus, the Superior Court's decision was based on the related premises that: (1) a minor could not recover medical expenses for the peri-od of her minority; and (2) a claim for medical expenses during the age of minority rests solely with the minor's parents. The Superior Court essentially found that, because parents have a support obligation, only they can recover medical expenses.

### *Early Case Law—In re Mikasinovich*

The two premises upon which the Superior Court based *Bowmaster* find support in early precedent. In *In re Mikasinovich,* 110 Pa.Super. 252, 168 A. 506, 509 (1933),[17] surveying the law of the time, the Superior Court stated:

> As respects the petition of the hospital and attending physician, neither of them has any claim upon the ward, as respects the fund derived by his guardian from the trial or settlement of this action or the accident and injuries with which it is concerned. Where a minor is living with his father in the family relation, in case of an action for injuries to the minor through the negligence of a third party, the claim of the father must include hospital and medical bills and expenses incurred because of the injury, if they are to be recovered, as well as compensation for loss of services of the son until he is twenty-one years old, *Oakland Ry.Co. v. Fielding,* 48 Pa. 320 [(1864)]; *Pennsylvania R. Co. v. Kelly,* 31 Pa. 372 [(1858)], *Woeckner v. Erie Electric Motor Co.,* 182 Pa. 182, 37 A. 936 [(1897)]; while the minor's claim is restricted to damages for pain and suffering and loss of earning power after he becomes of age, *Pennsylvania R. Co. v. Kelly,* supra.

168 A. at 509.[18] In *Mikasinovich,* a minor sustained an injury in an automobile acci-

---

**17.** The Superior Court, in *Bowmaster,* relied on *Hathi* which, itself, relied on *Olivieri v. Adams,* 280 F.Supp. 428, 429 (E.D.Pa.1968) for the articulation of these principles. The court, in *Olivieri,* relied on *In re Mikasino-* *vich,* 110 Pa.Super. 252, 168 A. 506, 509 (1933).

**18.** Subsequent Pennsylvania Supreme Court precedent similarly discussed the law. *Meisel*

dent, the minor's father brought a cause of action on father's behalf, and a separate cause of action on minor's behalf. The father entered into an agreement with the tortfeasor that would provide compensation to both him and his son individually. The agreement was placed before the orphan's court for approval of the father's settlement of the minor's claims. Several health care providers, who had cared for minor's injuries, submitted a lien to the orphan's court seeking satisfaction for medical services they rendered to the minor. Applying the legal principles set forth above to the medical providers' claims, the Superior Court made clear that if:

> this case had been, or should be, brought to trial, the verdict, if any, for the minor plaintiff could not have included, or could not include, one cent for hospital expenses or doctor's bills; that all such items would have to be included in the verdict, if any, for the father; and that the hospital and attending physician would have to look to the father for payment.

*Mikasinovich,* 168 A. at 509.

The Superior Court acknowledged that there were instances where a minor may be held responsible for payment of medical bills but, nonetheless, precluded the medical providers from receiving compensation from the minor's damages because those

damages did not include medical expenses during minority:

> It is true that there are many cases which hold that hospital and medical bills may be ordered to be paid as necessaries out of a minor's estate where his parents are unable to provide them and they are determined to be needful for his health.[19] But this is, as respects doctor and hospital bills in connection with the accident because of which the fund is realized, a different sort of "estate." *The law limits the recovery of the minor to damages for his pain and suffering and loss of earning power after he becomes of age,* and requires that all claims for expenses in connection with the nursing, hospital care, and medical services rendered the minor growing out of the injury shall be recovered by, and chargeable against, the father, if he is living and maintaining the family relation with the son.

*Mikasinovich,* 168 A. at 509 (emphasis added)(footnote added). The court noted that "[i]f it is desired to protect doctors and hospitals in such circumstances, it will be for the Legislature to take care of it, if it can constitutionally do so." *Id.*[20]

Another component of the Superior Court's decision in *Mikasinovich* is a concern against double-recovery of the same damages by both parent and minor. The Superior Court addressed this issue by

---

v. *Little,* 407 Pa. 546, 547–48, 180 A.2d 772, 773 (1962) (concluding that minor child's mother's claim for "money necessarily expended in treatment of her daughter's injuries and also for earnings lost during her minority" was not derivative of her daughter's claims for pain and suffering and for future loss of earnings); *Dellacasse v. Floyd,* 332 Pa. 218, 221 n. 1, 2 A.2d 860. (1938).

**19.** *See, e.g., Guthrie v. Murphy,* 4 Watts 80, 1835 WL 2783 at *2 (1835); *accord Aetna Casualty & Surety Co. v. Duncan,* 972 F.2d 523, 526 (3d Cir.1992).

**20.** While the present case does not involve the Legislature "tak[ing] care" of paying doctors for costs associated with treating minors injured by a third-party tortfeasor, the Legislature, through FACA, has clearly acted to "take care" of the Pennsylvania taxpayers by seeking reimbursement of funds expended by the taxpayers, through DPW, for injuries caused to a minor by a third-party. Such legislative action is consistent with the Superior Court's own guiding language to the legislature in *Mikasinovich.*

quoting the Pennsylvania Supreme Court's decision in *Philadelphia Traction Co. v. Orbann*, 119 Pa. 37, 47, 12 A. 816, 821 (1888), in which the high court found that "care must be taken also that the plaintiff [the minor] shall not be allowed to recover for any matter or thing to which his father may be entitled, in any action pending or to be brought, for damages resulting to him from the same injury." *Mikasinovich*, 168 A. at 509. Giving parent and child mutually exclusive claims was a method of protecting against dual recovery.

### Superior Court Critique of the Early Case Law—DeSantis

An examination of the origins of the parents' and child's mutually exclusive claims suggest that the prohibition against a minor receiving compensation for medical expenses during minority is a common law anachronism, and that our continued reliance on the principle calls to mind "the philosophical dictum by which Ralph Waldo Emerson has, over the years, comforted judges ... stating that a 'foolish consistency is the hobgoblin of little minds.'" *Zemprelli v. Thornburgh*, 55 Pa.Cmwlth. 330, 423 A.2d 1072, 1075 (1980).

The concept of children having a separate cause of action has its origin in what the Superior Court described as 19th century common law judges who were "interested in 'spinning out a symmetrical pattern of rights and duties.'" *DeSantis v. Yaw*, 290 Pa.Super. 535, 434 A.2d 1273 (1981) (citation omitted). These judges sought to afford children some rights and fathers some moral duties. *Id.* Until the mid–19th century, precedent treated "the minor child as the belonging of its father," thereby affording the father "an 'unquestioned right' to the services and custody of minor children," but did so without imposing a concomitant legal duty on the father to support the minor. *Id.* at 1273–74. The Superior Court noted that the common law had its origins in the concept of "paterfamilias of Roman times" which established children as the property of the father for the father to use (or dispose of) as he saw fit. *Id.* at 1273. In establishing a "reciprocity of duties of support and rights to custody and services," 19th Century common law judges imposed a duty on the father to support his children but, among other things, provided to the father a property right in the monies expended toward aspects of care made necessary by a tortfeasor. *Id.* at 1274. However, this precedent also afforded to the minor a new right: a distinct claim "for pain and suffering and for loss of earnings after reaching his majority." *Id.* However, the courts still recognized a father's exclusive right to the fruits of his minor children's labors, which was interpreted to also include monies for medical expenses incurred during the child's minority.[21] Moreover, despite recognizing the new right of a claim by minors, both the minor's claim and the parent's were "left to the discretion of the parent [to exercise] and both [were] barred after the passage of two years from the date of the accident." *Id.* at 1274–75.

In discussing the history of these distinct causes of action, the Superior Court, in *DeSantis*, was critical of the application of a two-year statute of limitations to a minor child's claims. *Id.* at 1275. The

---

**21.** For example, *Mikasinovich* cites *Philadelphia Traction Co.* as standing for the principle that a parent and minor child may not both recover the same damages. The damages at issue in *Philadelphia Traction Co.* were the wages the child would have earned during his minority, but for his injuries. The *Philadelphia Traction Co.* court prevented "double-recovery" by preserving the father's sole right to the child's income during the child's minority.

court noted that the law of this Commonwealth does not allow a minor to bring an action on his own behalf. *Id.* at 1276. Rather, such a minor is dependent upon a parent or guardian to initiate a claim on his behalf. *Id.* at 1276–77. The court expressed concern that a child may lose his ability to bring a case based on his parents' or guardian's inaction in timely bringing a claim. *Id.* In the *DeSantis* case, the Superior Court applied the existing precedent and statutory authority that linked the child's distinct claims with the parents' for statute of limitations purposes, and precluded the child's claim from proceeding because it was brought outside the two-year statute of limitations period. However, the court, after discussing the history of the dual causes of action, opined that "[r]ecent advances in the laws regarding children's rights have made an automatic decision growing out of a tradition that viewed children as possessions completely unpalatable." *DeSantis*, 434 A.2d at 1275. The court all but advocated for the development of a separate statute of limitations for children's claims and the General Assembly did eventually enact such a statute of limitations in 1984. *See generally*, 42 Pa.C.S. § 5533(b) (commonly referred to as the Minority Tolling Statute).[22]

Though the focus of the Superior Court's criticism of the distinct cause of action was directed at the statute of limitations aspect, the same historical concerns cast significant doubt on the continued validity of other aspects of the mutually exclusive, independent causes of action.

### Expansion of Children's Rights and its impact on Distinct Causes of Action

Beginning with the recognition in the 19th Century of claims belonging to the minor, and the application of a separate statute of limitations preserving those claims in the 20th Century, a clear trend emerges of an expansion of the rights of minors to recover for their injuries. Our common law and statutory law has seen:

[i]n the field of children's rights ... concrete gains by a complicated re-balancing of legal concepts: the relationship of parent and child has become a 'status, not a property right,' and yet at the same time the property rights of children in their parents, corresponding to that of parents in children, have increasingly been recognized.

*DeSantis*, 434 A.2d at 1275 (citations omitted).

Our statutory law contains examples of where the legislative branch has established a primary support obligation in parents to care and support their minor children, independent of the child's own assets.[23] The Superior Court, in *Bow-*

---

22. This subsection provides that:

(b) Infancy.—If an individual entitled to bring action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

42 Pa.C.S. § 5533(b).

23. *See, e.g.*, 23 Pa.C.S. § 4321(2); *see generally* 42 CFR § 435.602 (requiring agencies to consider income and resources of parents of children, when the children are under the age of 21, or are "blind and disabled"). This obligation is independent of a child's assets. *Sutliff v. Sutliff*, 515 Pa. 393, 402–03, 405, 528 A.2d 1318, 1322, 1324 (1987); *see also* Section 5314(c) of the Uniform Transfers to Minors Act (UTMA), 20 Pa.C.S. § 5314(c) ("Obligation of support not affected.—A delivery, payment or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person

*master,* seemed particularly concerned with not interfering with the parents' primary support obligation toward their minor children.

■ However, the law also establishes that in instances in which the minor, upon obtaining the age of majority, is unable to care for himself, the parents' support obligation continues.[24] The distinct causes of action set forth in our law lead to a situation in which a minor could recover post-majority medical expenses from the tort-feasor, yet the parents would remain responsible for those expenses, even though the minor has passed the age of majority.[25]

From this it seems the "re-balancing of legal concepts" identified in *DeSantis* has led to a blurring of what had been the clear precepts that shaped the common law development of the dual, distinct causes of action. This, in turn, casts considerable doubt on the rationale for the premises which were discussed and relied upon in *Bowmaster.*[26]

to support the minor."); *Sternlicht v. Sternlicht,* 583 Pa. 149, 876 A.2d 904 (2005) (providing that, under UTMA, property held by custodian property pursuant to UTMA is property of the minor).

**24.** While there is a presumption that a child becomes emancipated at the age of majority, that presumption can be rebutted if the child's inability to be self-sufficient already exists at the time the child reaches the age of majority. *Style v. Shaub,* 955 A.2d 403, 408–410 (Pa.Super.2008). Otherwise, the presumption is not rebuttable if the child became disabled after reaching the age of majority. *Id.* Parents may be required to provide for their children past the age of majority if physical or mental conditions keep the child from being self-supporting. *See* 23 Pa.C.S. § 4321(3) (support provision of the Domestic Relations Code providing that "[p]arents may be liable for the support of their children who are 18 years of age or older"); *see, e.g., Geiger v. Rouse,* 715 A.2d 454, 458 (Pa.Super.1998) (providing that "[t]here is a duty on parents to support a child that has a physical or mental condition, which exists at the time the child reaches its majority, that prevents the child from being self supporting. Such a child is not emancipated."); *see generally* 42 CFR 435.602. *Compare Style* (holding that support obligation ceases at age of majority if the child becomes disabled only after reaching the age of majority because "[t]he public policy behind such rationale is apparent, as there must be a logical end point to a parent's obligation to support his or her child. Otherwise, an adult child could theoretically sue their elderly parents for support after sustaining a debilitating injury well after reaching the age of majority.") *with* 23 Pa.C.S. § 4603(a) (filial responsibility support provi-

sions that require the "parent of [an] indigent person" to pay for the "care" of that person, regardless of whether the "indigent person is a public charge" and seemingly without reference to the indigent's age).

**25.** Such a scenario would likely, and unfortunately, not be uncommon in instances such as the present case, in which a child sustains severe developmental injuries that could prolong his parent's legal obligation long after the minor has reached the age of majority. In such a scenario, an anomaly arises in which parents may still be paying for an unemancipated adult child's medical care even if that child, while still a minor, specifically received money from a tortfeasor to be used for medical expenses after he obtains majority status.

**26.** The *Bowmaster* court relied on *Hathi,* in which the Superior Court rejected parents' argument that their claim "attache[d] to the minor's claim under 42 Pa.C.S. § 5533(b), and should accordingly be preserved as it ar[ose] out of the same incident and [was] joined with their claim on behalf of the minor child." *Hathi,* 561 A.2d at 1261. The Superior Court noted, in *Hathi,* that the issue raised by parents was novel. However, the court based its decision on Federal District Court cases: *Olivieri* (predating the enactment of the infancy tolling provisions by 16 years) and *Apicella v. Valley Forge Military Academy and Junior College,* 630 F.Supp. 20 (E.D.Pa.1985) (relying on *Olivieri* to conclude that parents' claims were not derivative of their minor child's and, thus, were not subject to the recently enacted 42 Pa.C.S. § 5533(b)). These Federal cases also relied on *Mikasinovich, Meisel,* and *Dellacasse.* The Superior

The Superior Court concluded, in *Bowmaster*, that the parents were the beneficiary of the medical assistance. However, most notably absent from the *Bowmaster* decision is any meaningful discussion of FACA and, in particular, any effort to give effect to the statutes' provisions. Review of FACA's language demonstrates that the minor child is, in fact, the beneficiary.

## APPLICATION OF FACA PROVISIONS

Returning to the statutory language at issue in *Bowmaster* and in this case, FACA clearly defines the term "beneficiary" as the recipient of the benefits, whether a past recipient or a future one, that is, as "any person who *has received* benefits or *will be provided* benefits under this act because of an injury for which another person may be liable." 62 P.S. § 1409(b)(13) (emphasis added). The second portion of the definition includes references to the "beneficiary's guardian, conservator, or other personal representative, his estate or survivors." 62 P.S. § 1409(b)(13) seems to merely be a recognition that, during the period of minority, a minor's claims must be brought by a guardian or parent and the minor. *See*

*generally* Rule of Civil Procedure 2228(b) (requiring a minor's claim be brought on the minor's behalf by a parent).[27] Consequently, that the focus remains on the recipient of the relief (the minor) is evident by the use of the possessive "beneficiary's" before guardian—the guardian is the beneficiary only to the extent the guardian is bringing the claim on behalf of the minor, who is the true beneficiary.

■ Under FACA's language, the beneficiary of DPW's payment of medical benefits is the child who receives the medical care while the underlying liability issues with the tortfeasor are sorted out through the legal system. Our case law has long acknowledged that a minor may contract for necessities when a guardian or parent is not supplying his needs. *See, e.g., Guthrie v. Murphy*, 4 Watts 80, 1835 WL 2783, at *2 (1835); *accord Aetna Casualty & Surety Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir.1992). Consistent with this case law, under Section 1404 of FACA, acceptance of MA benefits for which a minor has applied (through his parents) essentially creates, by operation of law, a contractual relationship arising from the parents' inability to fully provide for the child's medical needs.[28]

Court's conclusion in *Hathi* that "parents' claims for medical expenses and loss of minor's services due to personal injury to a minor child" were not "derivative" of the minor's claims and, thus, were not subject to the minor tolling provisions of 42 Pa.C.S. § 5533(b) were based primarily on Federal case law that was, itself, applying decades old Pennsylvania case law.

27. Pa. R.C.P. No. 2228 provides, in relevant part:

(b) If an injury, not resulting in death, is inflicted upon the person of a minor, and causes of action therefor accrue to the minor and also to the parent or parents of the minor, they shall be enforced in one action brought by the parent or parents and the

child. Either parent may sue therefor in the name of both; but if the parents live apart the action shall be brought by the parent having the custody of the child and the control of its services.

28. Section 1404 of FACA indicates that it applies throughout the article and provides that any person who has applied and accepted medical benefits from DPW, "assign[s] to [DPW], by operation of law ... the assistance recipient's rights to recover support, specified by a court as support for the payment of medical care and to payment for medical care from any third party." 62 P.S. § 1404(b). "Applicant" is an "adult with whom an unemancipated minor lives will be the applicant *in the behalf of the child.*" 55 Pa.Code § 123.82 (emphasis added). It follows then

■ Such a relationship is consistent with the language and policy behind FACA, which shows a clear legislative intent to provide DPW with a broad means of recovering funds expended on a minor as a result of a third-party tortfeasor's actions. Additionally, such a relationship is consistent with the principles this Court has recognized that "there is no constitutional right to receive public assistance" and that our legislature has a "legitimate interest in allocating undeniably scarce social welfare resources to those considered most needy." *Stanley v. Department of Public Welfare*, 112 Pa.Cmwlth. 157, 535 A.2d 674, 677 (1987). Statutes should be construed to favor the public interest over private interests, 1 Pa.C.S. § 1922(5), and the public interest is certainly protected more by requiring tortfeasors, and not taxpayers, to pay for the negligent acts of those tortfeasors.[29]

While the General Assembly's intent to establish a primary support obligation of parents in their minor children cannot be ignored, the continued application of that principle does not require that we ignore or interpret away the General Assembly's intent behind FACA. The principles that a parent maintains a primary support obligation and that third-party tortfeasors, and not the taxpayers, should pay for a minor's medical expenses, are not necessarily incongruent as is suggested in *Bowmaster*.

■ While Federal Medicaid Law prevents DPW from seeking reimbursement directly from most minors' estates, 42 U.S.C. § 1396p(b)(1), tort proceeds due the minor may be used to repay DPW to the extent the proceeds contain reimbursement for medical expenses. *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 284–85, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006); *see generally* Section 1409.1 of FACA, 62 P.S. § 1409.1 (requiring the trial court or agency to allocate a portion of an award or agreement to medical fees, and affording DPW a first lien or actual payment from the medical portion of the award).[30]

that the eligible person is the child, on whose behalf the guardian acts.

**29.** We note that, from our review of *Bowmaster*, the Superior Court did not discuss the particulars of FACA. Since the *Bowmaster* decision, DPW has issued a statement of policy that:

Although the general rule in this Commonwealth is that the parent sues for a child's medical expenses, *In re Mikasinovich*, 110 Pa.Super. 252[,] 168 A. 506 (1933), the provisions of section 1409(b) of the code do not distinguish between minor and adult beneficiaries and a minor's estate may be liable to repay MA under certain circumstances. *Shearer v. Moore*, 255 Pa.Super. 246, 386 A.2d 600 (1978). The rule announced in *Mikasinovich* and similar cases predates modern health insurance and [DPW] does not see sound policy reason to interpret section 1409 of the code as extending that rule to the recovery of MA owed with respect to minors. Accordingly, [DPW] interprets section 1409(b) of the code as providing that minors and adults, as beneficiaries of MA, recover MA expenses in the same way in tort actions. If the minor beneficiary has a viable cause of action, the recovery of MA expenses is not barred by the statute of limitations applicable to the parent's cause of action.

37 Pa. Bull. 4881. Our examination of the applicable statutory language and precedent leads us to a similar conclusion, independent of DPW's statement of policy.

**30.** This section, which was added by the Act of July 4, 2008, P.L. 557, § 10, and effective September 2, 2008 and, thus, not applicable to this case, provides, in relevant part:

(a) To the extent that Federal law limits the [DPW]'s recovery of medical assistance reimbursement to the medical portion of a beneficiary's judgment, award or settlement in a claim against a third party, the provisions of this section shall apply.

(b) In the event of judgment, award or settlement in a suit or claim against a third party or insurer:

FACA's provisions go to great length to ensure that DPW has a place at the settlement table and, if necessary, the trial table, in cases for which it has paid MA benefits. By providing DPW the opportunity to be involved in negotiations, the statutory language affords DPW the means to ensure that any settlements have a specific line item for DPW's claims or lien. Such a system serves the dual function of protecting the Commonwealth's taxpayers by allowing DPW to be compensated from the actual tortfeasors, while not detracting from the minor's recovery. This opportunity that the General Assembly statutorily afforded DPW cannot be taken away by improper notice or by antiquated notions of dual recovery.

(1) If the action or claim is prosecuted by the beneficiary alone, the court or agency shall first order paid from any judgment or award the reasonable litigation expenses, as determined by the court, incurred in preparation and prosecution of the action or claim, together with reasonable attorney fees. *After payment of the expenses and attorney fees, the court or agency shall allocate the judgment or award between the medical portion and other damages and shall allow the [DPW]a first lien against the medical portion of the judgment or award,* the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.
(2) If the action or claim is prosecuted both by the beneficiary and the [DPW], the court or agency shall first order paid from any judgment or award the reasonable litigation expenses incurred in preparation and prosecution of the action or claim, together with reasonable attorney fees based solely on the services rendered for the benefit of the beneficiary. After payment of the expenses and attorney fees, *the court or agency shall allocate the judgment or award between the medical portion and other damages and shall make an award to the [DPW] out of the medical portion* of the judgment or award the amount of benefits paid on behalf of the beneficiary under the medical assistance program.
62 P.S. § 1409.1 (emphasis added).

■ Accordingly, given the facts presented to us in this declaratory judgment, we conclude that a minor is not prevented from seeking medical expenses incurred while he is a minor, so as to enable DPW to recover its lien for monies it has expended, as long as such a claim is not duplicated by the parents.[31] Accordingly, we deny Petitioners' Motion.

## RESOLUTION OF THE MOTION BEFORE THIS COURT

■ Petitioners ask this Court, in their Petition for Review to declare that Sections 1404 and 1409 of FACA, 62 P.S. §§ 1404, 1409, are inapplicable to this case. We decline to do so. Rather, we find that as minors are the intended beneficiaries of MA, these provisions of FACA afford

**31.** We note that a similar approach has been recognized in several other states. *See State v. Perry,* 221 W.Va. 526, 655 S.E.2d 548 (2007) (granting the writ of prohibition sought by the minor to permit the minor to seek retroactive recovery of medical expenses incurred during his minority as a result of the alleged conduct of a doctor); *see also Garay v. Overholtzer,* 332 Md. 339, 631 A.2d 429, 445 (1993) (establishing an exception where a parent is too poor to provide medical care to a child); *Lopez v. Southwest Community Health Services,* 114 N.M. 2, 833 P.2d 1183 (Ct.App.1992) (finding that medical expenses can be recovered by a minor because the right exists in both the child and parent as long as double recovery does not occur); *Myer v. Dyer,* 643 A.2d 1382 (Del.Sup.Ct.1993) (holding that parents waived their medical expense claim because they did not timely file it, yet finding that a separate claim existed on behalf of the minor to recover medical expenses because she was a recipient of Medicaid benefits and the state was entitled to reimbursement from a portion of her recovery under a statute similar to 62 P.S. § 1409(b)); *White v. Moreno Valley Unified School District,* 181 Cal.App.3d 1024, 226 Cal.Rptr. 742 (1986)(finding a waiver in the dismissal of parents' claim for medical expenses, thereby enabling the minor to seek recovery of the medical expenses).

DPW a means to recover from third-party tortfeasors the amount DPW provided.[32]

 DPW asks this Court to declare that its lien must be paid. We must, at this time, decline this request. A "court may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 34, 928 A.2d 186, 195 (2007). In this case, questions remain as to the sufficiency of notice under FACA that Petitioners provided to DPW as to both the trial court litigation and resulting settlement discussions. Further factual development is necessary for resolution of this issue.[33] Accordingly, summary judgment is not appropriate in this case.

For these reasons we deny Petitioners' Motion for Summary Judgment.[34]

### *O R D E R*

NOW, November 3, 2008, Petitioners' Motion for Summary Judgment is DENIED.

---

**32.** Petitioners in their Motion also ask this Court to change the common law to grant minor children an "independent right to recover medical expenses incurred during the period of [the child's] minority." (Motion at 12.) While the "The Declaratory Judgment Act, 42 Pa.C.S. § 7531, *et seq.*, which became effective in Pennsylvania on June 27, 1978, is broad in its scope and is to be liberally construed, [it] is not without its limitations." *Doe v. Johns–Manville Corp.*, 324 Pa.Super. 469, 471 A.2d 1252 (1984). "Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation. They may not be used to search out new legal doctrines." *Id.* at 1254. Thus, our task in this case is a limited one, directed at examining DPW's rights under FACA.

**33.** At argument, DPW indicated that it would not pursue the lien if ASD's medical expenses during minority were not a part of the settlement negotiations. This position is consistent with applicable United States Supreme Court law and Pennsylvania statutory law. Thus, resolution of this factual issue is critical for determining if the lien should be paid. The remaining factual issues in this case seem to have arisen from an uncertainty in the law as to DPW's ability to recover minor medical expenses when parents' claims have been dismissed. Given our holding in this case, subsequent cases should avoid this ambiguity because of FACA clearly providing that DPW's interest must be addressed and protected by all involved in the litigation.

**34.** To the extent that DPW's answer to this motion is a cross-motion for summary judgment, we similarly deny DPW's motion for summary judgment.